HUBBART, Judge.
This is an appeal by the respondent L.J. from a juvenile delinquency adjudication for unlawful sale of cocaine and unlawful possession of cocaine. The central issue presented for review is whether the trial court erred in denying the respondent’s motion for a judgment of non-delinquency as to the unlawful possession of cocaine charge; no point on appeal is raised with respect to the finding of delinquency on the sale of cocaine charge. For the reasons which follow, we affirm the delinquency adjudication under review as to the finding of delinquency on the sale of cocaine charge, but strike therefrom the finding of delinquency as to the possession of cocaine charge.
I
The undisputed evidence adduced by the state at trial established that on August 23, 1989, four officers from the Metro-Dade Police Department, pursuant to an anonymous tip, set up an undercover drug operation at the corner of S.W. 186 Street and S.W. 119 Avenue in Dade County for the purpose of purchasing cocaine with marked bills. Detective Iglesias, in plain clothes, posed as a potential buyer on this corner, while the other officers remained hidden nearby as a surveillance team.
At around 10:50 P.M., Iglesias was approached by an adult male in his mid-thirties; the two struck up a conversation during the course of which Iglesias asked the young man for “Mike” who usually “helps me out when I — when I come”. The young man replied that he did not know if “Mike” was around and then began to walk away, stating he would be back. About a minute *361 later, a large juvenile approached Iglesias from the same direction in which the young man had gone and stated that “Mike” was not around. Iglesias then stated that he wanted “twenty dollars worth,” and the juvenile responded that he (the juvenile) would go to “Mike’s” and get some.
A short time later, the juvenile returned with the respondent L.J. L.J. walked around Iglesias, looking him over, and then stood behind the detective and said, “Okay.” At that point, the juvenile opened his hand and showed Iglesias three zip-locked baggies, each containing one cocaine rock. Iglesias took the baggie that the juvenile stated contained the biggest rock and gave the juvenile a marked twenty-dollar bill. The two juveniles then walked away in the direction from which they had come, and Iglesias saw the first juvenile hand some money to L.J. The surveillance team thereupon arrested the two juveniles; a pat-down search of L.J. revealed the marked twenty-dollar bill, but no cocaine.
L.J. was subsequently charged in a petition for delinquency with (1) unlawful possession of cocaine, and (2) unlawful sale of cocaine. Following the above testimony, the respondent moved for a judgment of non-delinquency on both charges. The trial court denied the motion, found the respondent delinquent on both charges, and placed the respondent on community control. This appeal follows.
II
At the outset, we disagree with the respondent that the finding of delinquency for unlawful possession of cocaine was barred by his constitutionally guaranteed right against double jeopardy based on the asserted ground that the same cocaine was involved in both the sale and possession charges. The Florida Supreme Court has recently rejected this contention and held that an accused’s right against double jeopardy is not violated by dual convictions, as here, for unlawful sale and possession of the same contraband. State v. McCloud, 577 So.2d 939 (Fla.1991). We agree, however, with the respondent that the state’s evidence, while sufficient to establish that L.J. aided and abetted the first juvenile in the unlawful sale of cocaine to Detective Iglesias, was insufficient to establish that L.J. actually or constructively possessed the cocaine which the first juvenile sold to Iglesias.
A
Section 893.13(l)(f), Florida Statutes (1989) — which the respondent was charged with violating in count two of the petition of delinquency — provides that “[i]t is unlawful for any person to be in actual or constructive possession of a controlled substance,” subject to certain exceptions not relevant here, and that such offense is punishable as a third-degree felony; a “controlled substance,” in turn, is defined as including “cocaine ... and any salt, compound, derivative, or preparation of co-caine_” § 893.03(2)(a)(4), Fla.Stat. (1989).
It is well settled that a person is in “actual ... possession” of a controlled substance, for purposes of the above statute, when he physically possesses the substance with knowledge of such illicit possession;[1] moreover, a person may be found guilty of “actual ... possession” of a contraband substance, although not in physical possession of same, if he aids or abets another party in either acquiring or retaining possession of same.[2] It is equally well settled that a person is in. “constructive possession” of a controlled substance, for purposes of the above statute, when he has knowledge of the illicit presence of such substance, coupled with the ability to maintain control over it or to reduce it to his physical possession, even though he does not have actual personal dominion over *362 same.[3]
“[T]he law is clear that one is not guilty of possession [of a controlled substance] by virtue of aiding and abetting [a confederate in] a sale [of such substance].” Kickasola v. State, 405 So.2d 200, 201 (Fla. 3d DCA 1981). Indeed, Florida courts have consistently reversed convictions for unlawful possession of a contraband drug when based solely on such aiding and abetting evidence — often where the defendant was heavily involved in the negotiations leading to, as well as the consummation of, the illicit sale of drugs, although without actually handling the drugs.[4] By definition, the person who actually possesses a contraband drug has physical control over it, see cases cited supra note 1, with the power “to exclude others from like control,” Brown on Personal Property 21 (1936)— and while that physical dominion continues, another person obviously does not have the physical ability to maintain control over the drug or to reduce it to his physical possession, and, therefore, cannot actually or constructively possess it. Indeed, as the trial court below correctly observed, “only one person at a time can handle one cocaine rock — obviously, they can’t both hold it.” (T.176).[5] Moreover, it has been held that a defendant who assists a confederate in selling or delivering a contraband drug does not, by so doing, aid and abet the confederate in the latter’s actual possession of such drug because the defendant has not assisted the confederate in either acquiring or retaining the drug, but to the contrary, has actually aided the confederate in divesting the latter of any possession thereof. Daudt v. State, 368 So.2d 52, 54 (Fla. 2d DCA 1979). In sum, then, a person who aids and abets a confederate in selling or delivering contraband drugs, which are physically possessed by only the confederate, may be convicted of unlawful sale or delivery of said drugs, but not of unlawful possession of said drugs. Kickasola; cases cited supra note 4.
B
Turning to the instant case, we conclude that the state’s evidence at trial was insufficient to establish that the respondent was in actual or constructive possession of cocaine as charged in the delinquency petition. Plainly, the respondent was not in actual possession of the cocaine because the first juvenile was at all times in physical possession of the cocaine until he sold it to Detective Iglesias. Moreover, there is no evidence that the respondent aided or assisted the first juvenile in either acquiring the cocaine or in retaining possession of it; to the contrary, the respondent’s sole role in this case was to assist the first juvenile in selling the drug to Iglesias, and thus in divesting the first juvenile of any possession thereof. Daudt, 368 So.2d at 54.
There is also no evidence that the respondent was in constructive possession of the subject cocaine. The only alleged evidence as to this element was that the respondent aided and abetted the first juvenile in the cocaine sale by serving, as the trial court found, as a consultant to the first juvenile on the subject sale and in later obtaining the profits of the sale. The trial court stated:
“[L.J.] was brought along as a consultant and then did not perform that role with any great deal of expertise because what he attempted to — what *363 the Court is convinced beyond a reasonable doubt that what [L.J.J’s role was, was to check out the purchaser to make sure that it wasn’t a police officer, to check out the surrounding area to make sure that they weren’t under surveillance by the police or something like that:
And, in fact, not only did that, and indicated — circumstantially, the expression ‘Okay, ’ which was immediately followed by the transaction, was his indication that in his opinion the sale could proceed. Had he not given his assent, the sale would not have taken place.
They then left together and the twenty dollar bill that was used in the sale ended up in [L.J.J’s possession_”
T.176 (emphasis added).
Based on the controlling law of this state, however, it is clear that the above aiding and abetting evidence cannot constitute sufficient proof of constructive possession of the subject cocaine. Kickasola; cases cited supra note 4. The first juvenile had actual possession of the cocaine in this case and thus had physical control over it at all times until he transferred same to Detective Iglesias. While the cocaine was in the first juvenile’s actual possession, L.J. clearly did not have the physical ability to maintain control over the drug or to reduce it to his physical possession, and, therefore, did not constructively possess it. He did, however, aid and abet the first juvenile in effecting the sale of cocaine to Iglesias and was therefore properly found delinquent on this charge.
The juvenile delinquency adjudication under review is affirmed as to the finding of delinquency on the sale of cocaine charge, but the finding of delinquency on the possession of cocaine charge, as contained in said adjudication, is hereby stricken.
Affirmed as modified.

. Daudt v. State, 368 So.2d 52, 53 (Fla. 2d DCA), cert. denied, 376 So.2d 76 (Fla.1979); Hively v. State, 336 So.2d 127, 129 (Fla. 4th DCA 1976); Willis v. State, 320 So.2d 823 (Fla. 4th DCA 1975).

. Compare Daudt, 368 So.2d at 54.

. Green v. State, 460 So.2d 986 (Fla. 4th DCA 1984); Kickasola v. State, 405 So.2d 200, 201 (Fla. 3d DCA 1981); Wale v. State, 397 So.2d 738, 739 (Fla. 4th DCA 1981); Ramirez v. State, 386 So.2d 584, 585-86 (Fla. 3d DCA), rev. denied, 392 So.2d 1379 (Fla.1980); Daudt, 368 So.2d at 53; Dixon v. State, 343 So.2d 1345, 1348 (Fla. 2d DCA 1977); Spataro v. State, 179 So.2d 873, 877 (Fla. 2d DCA 1965).

. Daudt v. State, 368 So.2d 52 (Fla. 2d DCA), cert. denied, 376 So.2d 76 (Fla.1979); DiSangro v. State, 422 So.2d 14 (Fla. 4th DCA 1982, rev. denied, 434 So.2d 887 (Fla.1983); Stephenson v. State, 371 So.2d 554 (Fla. 2d DCA 1979); Range v. State, 368 So.2d 366 (Fla. 2d DCA 1979).

.Where, however, contraband drugs are not physically possessed by anyone, but are located on private premises jointly controlled and occupied by two or more people, such persons may be convicted of constructive possession of the aforesaid drugs if the requisite scienter is shown. See, e.g., Frank v. State, 199 So.2d 117, 120-21 (Fla. 1st DCA 1967).