639 So.2d 966 (1994)
Michael Allen GRIFFIN, Appellant,
v.
STATE of Florida, Appellee.
No. 77843.
Supreme Court of Florida.
July 7, 1994.
*967 Andrew M. Kassier, Sp. Asst. Public Defender, Miami, for appellant.
Robert A. Butterworth, Atty. Gen. and Fariba N. Komeily, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Michael Allen Griffin appeals his convictions of first-degree murder and other crimes and corresponding sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
On April 27, 1993, Griffin, Samuel Velez, and Nicholas Tarallo determined to commit a burglary. They left Tarallo's apartment in Griffin's father's Cadillac and drove to the location of a white Chrysler LeBaron where they switched cars. Griffin had previously stolen the Chrysler, and he used the vehicle during burglaries. Once in the Chrysler, the three proceeded to search for an appropriate target. After driving around, the trio approached an apartment building in Broward County. Nothing happened at this location, and as they left, Griffin suggested they go to the Holiday Inn Newport where Griffin had committed successful burglaries in the past. Upon arriving at the Holiday Inn, Griffin and Velez exited the car, entered a hotel room, and stole a cellular phone and purse. The three then left the Holiday Inn. Tarallo drove while Griffin and Velez divided the stolen property.
While leaving the Holiday Inn and returning to the Cadillac, the three observed a police car. Griffin panicked and told Tarallo to turn, speed up, and turn several more times. During these maneuvers, another police car, driven by Officers Martin and Crespo, spotted the Chrysler, noticed the three men acting suspiciously, and began to follow. At this point, Tarallo tried to pull over but Griffin stated that he would not go back to jail and ordered Tarallo to continue to evade the police. Finally, Tarallo was able to pull over and attempted to exit the vehicle. As he got out, Griffin began shooting at the police, killing Officer Martin. After an exchange of gunfire, Tarallo and Velez exited the vehicle and surrendered to Officer Crespo. Griffin fled in the Chrysler and was eventually apprehended.
Griffin was charged with the first-degree murder of a law enforcement officer (Officer Martin), the attempted first-degree murder of a law enforcement officer (Officer Crespo), the burglary of the Holiday Inn room, two counts of grand theft (one involving the Chrysler LeBaron and one involving the items stolen from the hotel room), and one count of unlawful possession of a firearm by *968 a convicted felon.[1] After a jury trial, Griffin was convicted on all counts.
After the sentencing phase, the jury recommended death by a vote of ten to two. In his sentencing order, the trial judge found the following aggravating factors: (1) previous conviction of a felony involving violence (the attempted murder of Officer Crespo); (2) the capital felony was committed while the defendant was engaged in the commission of a burglary; (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest; and (4) the murder was cold, calculated, and premeditated. § 921.141(5)(b), (d), (e), (i), Fla. Stat. (1991). In mitigation, the court found that Griffin was twenty years old at the time of the murder, had shown remorse, had a traumatic childhood, and had a learning disability. The judge determined that the aggravators outweighed the mitigators and followed the jury recommendation by sentencing Griffin to death.
As his first issue on appeal, Griffin argues that the trial court erred in allowing the State to elicit evidence of numerous acts of criminal behavior on the part of Griffin. Griffin points to six instances where the State introduced evidence that Griffin characterizes as Williams rule evidence. He claims that the State made this evidence a "feature" of the trial, and contends that the State failed to provide notice of its intent to rely on the evidence pursuant to section 90.404(2)(b)1., Florida Statutes (1991). Griffin also argues that the evidence was not relevant to prove any material issue in the case.
Generally, the test for the admissibility of evidence is relevance. § 90.402, Fla. Stat. (1991). Relevant evidence is defined as "evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (1991). "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. (1991).
Section 90.404(2)(a), Florida Statutes (1991), provides:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
This rule of evidence is often called the "Williams rule," because the statutory language tracks the language in Williams v. State, 110 So.2d 654, 662 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). If the State wishes to introduce Williams rule evidence in a criminal action, it must provide the defendant notice, at least ten days before trial, of the acts or offenses it intends to offer. § 90.404(2)(b)1., Fla. Stat. (1991).
In the past, there has been some confusion over exactly what evidence falls within the Williams rule. The heading of section 90.404(2) is "OTHER CRIMES, WRONGS, OR ACTS." Thus, practitioners have attempted to characterize all prior crimes or bad acts of an accused as Williams rule evidence. This characterization is erroneous. The Williams rule, on its face, is limited to "[s]imilar fact evidence." § 90.404(2)(a), Fla. Stat. (1991) (emphasis added).
Thus, evidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is not Williams rule evidence. It is admissible under section 90.402 because "it is a relevant and inseparable part of the act which is in issue.... [I]t is necessary to admit the evidence to adequately describe the deed." Charles W. Ehrhardt, Florida Evidence § 404.17 (1993 ed.); see Gorham v. State, 454 So.2d 556, 558 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 941, 83 L.Ed.2d 953 (1985); Erickson v. State, 565 So.2d 328, 332-33 (Fla. 4th DCA 1990), review denied, 576 So.2d 286 (Fla. 1991); Tumulty v. State, 489 So.2d 150, 153 (Fla. 4th DCA), review denied, 496 So.2d 144 (Fla. 1986).
*969 We turn now to the facts of the instant case. Count IV of the indictment under which Griffin was tried charged him with the theft of the white Chrysler LeBaron which Griffin used during burglaries. The car was rented by Mr. Richard Marshall. During the trial, Mr. Marshall testified that on the evening of April 23, 1990, he returned to the Miami Beach hotel where he was staying, placed the car keys on the dresser, and retired for the evening. When he awoke the next morning, Mr. Marshall found that the car keys and the car were gone.
Griffin concedes that his possession of the automobile was admissible because grand theft was a charge the jury was considering. However, Griffin argues that the testimony relating to the missing keys was inadmissible Williams rule evidence because it suggested that the hotel room had been burglarized, and was used by the State to show that Griffin had a propensity to burglarize motel rooms.
Mr. Marshall's testimony does not fall within the Williams rule. It was not introduced by the State as similar fact evidence. The manner in which the car keys were taken was inextricably intertwined with the theft of the automobile, one of the charges before the jury. The testimony was necessary to establish the entire context out of which the crime arose. Mr. Marshall's testimony was relevant and not unduly prejudicial. Therefore, there was no error in its admission.
Griffin next argues that the trial court erred in admitting certain testimony from Mr. Charles Pasco. Mr. Pasco testified that on the evening of April 26, 1990, his girlfriend and he were accosted and robbed at his home by three armed men. During the "home invasion" robbery, cash and a .357 Ruger handgun were stolen. Mr. Pasco identified the gun which Griffin used to murder Officer Martin as the one which was stolen from his home on April 26. Subsequently, Nicholas Tarallo testified that it was Griffin who stole the gun during the encounter with Mr. Pasco.[2]
Griffin concedes that his possession of the murder weapon is relevant and admissible. However, he contends that how he obtained the murder weapon is not. We disagree. Mr. Pasco's testimony was necessary to identify the gun and to show that the gun was stolen from the possession of its rightful owner. Nicholas Tarallo's testimony identified the individual who stole the gun as Griffin, thereby establishing possession. This evidence was essential to show Griffin possessed the murder weapon. Therefore, it is relevant. Further, the State did not make a "feature" out of Mr. Pasco's testimony, and the probative value of the evidence outweighed any possible prejudice to Griffin.
Griffin next contends that the State elicited improper testimony from Nicholas Tarallo regarding a second stolen vehicle. However, there was no objection to the State's questions on Williams rule grounds, or on any other grounds. Therefore, the issue was not preserved for appellate review.
The fourth and fifth alleged Williams rule violations also involve the testimony of Nicholas Tarallo. On direct examination, Tarallo related the events leading up to the murder of Officer Martin. Tarallo testified that around midnight on April 27, Griffin, Velez, and he went out intending to rob someone. As they proceeded to Broward County in the white LeBaron, Griffin spotted an apartment complex which appeared to be a promising target. The trio pulled into the complex parking lot but left before attempting to burglarize any of the apartments. After leaving the complex, the three proceeded to the Holiday Inn Newport. The fatal encounter *970 with Officer Martin occurred as Griffin, Velez, and Tarallo left the Holiday Inn.
Griffin argues that the testimony involving the apartment complex was inadmissible. However, to prove its case, the State is entitled to present evidence which paints an accurate picture of the events surrounding the crimes charged. Smith v. State, 365 So.2d 704, 707 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Austin v. State, 500 So.2d 262, 265 (Fla. 1st DCA 1986), review denied, 508 So.2d 13 (Fla. 1987). Tarallo's testimony was relevant and necessary to adequately describe the events leading up to the burglary of the hotel room and the murder of Officer Martin, crimes for which Griffin was being tried. Tarallo's testimony revealed that the three men set out on the evening of April 27 intent on committing a burglary and that they searched until they found a suitable location. While this testimony is prejudicial to Griffin, we have recognized that almost all evidence introduced by the State in a criminal prosecution is prejudicial to the defense. Amoros v. State, 531 So.2d 1256, 1260 (Fla. 1988). The focus of Tarallo's testimony was the events surrounding the crimes for which Griffin was on trial. We conclude that Tarallo's testimony was relevant and not unduly prejudicial.
On direct examination, Tarallo also testified that after leaving the apartment complex Griffin stated the three should go to the Holiday Inn because "he had got paid there five hundred times."[3] Griffin argues that this testimony should not have been admitted. On this point, we agree with Griffin. The mere reference to other burglaries was obviously not similar fact evidence. It did not describe acts which were inextricably intertwined with the events for which Griffin was on trial. Nor was it relevant to prove any other material fact. Evidence which is not relevant is, of course, inadmissible.
However, the statement by Tarallo was ambiguous and no mention of it was made by the State in its closing argument to the jury. On this record, the erroneous admission of this evidence was harmless error beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Griffin next argues that the trial court erred in restricting the introduction of nonstatutory mitigating evidence. During the penalty phase of the trial, Griffin sought to introduce statements made by him to several witnesses indicating his remorse. The State objected, arguing that the statements were self-serving hearsay, and the trial court sustained the objection. The trial court also prevented the defense from introducing a newspaper article written about Griffin which the defense argued was relevant to show Griffin's character.
We have held that the State may not bar relevant mitigating evidence from being presented and considered during the penalty phase of a capital trial. Hitchcock v. State, 578 So.2d 685, 689 (Fla. 1990), vacated on other grounds, ___ U.S. ___, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). Further, a defendant in a capital case has an absolute right to introduce nonstatutory mitigating evidence at the penalty phase of his trial. Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In Florida, remorse is a proper nonstatutory mitigating circumstance. Smalley v. State, 546 So.2d 720, 723 (Fla. 1989). However, a defendant's right to introduce hearsay testimony at the sentencing phase is not unlimited. Hitchcock, 578 So.2d at 690. "While the rules of evidence have been relaxed somewhat for penalty proceedings, they have not been rescinded.... [There is no merit] to [the] claim that the state must abide by the rules but that defendants need not do so." Id.
In the instance case, Griffin was not precluded from presenting evidence of remorse. In fact, the judge expressly found remorse as a nonstatutory mitigating circumstance. The judge acted within his discretion to preclude Griffin from eliciting hearsay testimony from witnesses to the effect that Griffin had made self-serving statements that he was sorry for murdering Officer Martin.
We find that the newspaper article was also properly excluded. At the time of trial, the individual who wrote the article, *971 Mr. Randy Gage, was available and testified. At trial, Mr. Gage stated that he had written the article, and related his knowledge of Griffin's background, character, and culpability as contained in the article. Further, he was permitted to testify as to his opinion on alleged shortcomings in the "system," as reflected in the article. The trial judge did not err in precluding Griffin from reading the article to the jury.
Griffin next argues that the trial court erred in finding the aggravating factor that the murder was committed while Griffin was engaged in the commission of a burglary. Griffin reasons that at the time of the murder the burglary was legally complete. The State responds that the record clearly supports the aggravating factor. In considering the applicability of this factor, it should be noted that it also pertains to a capital felony committed while the defendant was engaged in flight after committing one of the requisite felonies.
In Parker v. State, 570 So.2d 1048 (Fla. 1st DCA 1990), the defendant robbed a man at a rest area off Interstate 10. After the robbery, the defendant drove to a convenience store. Sheriff's deputies identified the defendant's car as he left the convenience store and began to follow. Id. at 1050-51. During the chase, one of the deputies was killed. The defendant was charged and convicted of second-degree felony murder. On appeal, the court was faced with the issue of whether the robbery at the rest area could be used to support the murder conviction where the statute provides that the murder must occur "in the perpetration of" a robbery. Id. at 1051 (see § 782.04(3), Fla. Stat. (1989)).
In analyzing this issue, the court pointed out that "[t]he term `in the perpetration of' includes the period of time when a robbery is attempting to escape from the scene of the crime." Id. (citing Hornbeck v. State, 77 So.2d 876 (Fla. 1955)). In the absence of some definitive break in the chain of events between the felony and the murder, the felony is said to continue to the time of the killing. The court suggested several factors "to be considered in determining whether there has been a break in the chain of circumstances [including] the relationship between the underlying felony and the homicide in point of time, place and causal relationship." Id. Applying those factors to the case before it, the court found that the robbery was ongoing at the time of the deputy's death. The court noted that the entire chain of events from the robbery to the murder was no more that one hour and the killing occurred no more than several miles away from the site of the robbery. Further, the defendant had made only one stop between the robbery and the killing, to get gas and ask directions to the motel where he was staying, and which was his "place of safety." Id. at 1052.
In the instant case, we cannot agree with Griffin that the burglary of the hotel room was complete when he shot Officer Martin. Griffin, Velez, and Tarallo encountered the police almost immediately after they left the hotel parking lot. The three were in the stolen car they used specifically during robberies and were attempting to reach Griffin's father's Cadillac, which would constitute a point of temporary safety in this case. Once they spotted the police, the trio attempted to evade but were unsuccessful. In the ensuing shootout, Officer Martin was killed. The entire sequence of events, from the burglary of the hotel room to the shooting, took fifteen minutes. The aggravating factor that the murder was committed during the commission of a robbery is clearly applicable here.
Finally, Griffin argues that the evidence did not support the cold, calculated, and premeditated aggravating factor. In his sentencing order, the trial judge stated:
The evidence shows beyond a reasonable doubt that the murder of Officer Martin was committed in a cold, calculated and premeditated manner.... On April 26, 1990, the defendant, after committing an armed burglary and robbery, stated to both Mr. Tarallo and Mr. Velez that if they were pulled over by the police, he would get out and shoot because he was not going back to jail. Twenty-six hours later, on April 27, 1990, the defendant committed another armed burglary. As the defendant, Mr. Tarallo and Mr. Velez were driving away from the scene of that burglary, *972 Officers Martin and Crespo attempted to pull the defendants vehicle over. The defendant again told Mr. Tarallo and Mr. Velez that he was not going back to jail. After Mr. Tarallo pulled the car over, the defendant got out of the car and began shooting at the police officers, resulting in Officer Martin's death. The Court finds that this evidence demonstrates a substantial period of reflection and thought by the defendant. See Harvey v. State, 529 So.2d 1083 (Fla. 1988); Remeta v. State, 522 So.2d 825 (Fla. 1988); Johnson v. State, 438 So.2d 774 [774] (Fla. 1984 [1983]). The defendant had considered and planned the fact that if he was stopped after committing a burglary, he would shoot the police officers in order to prevent his going back to jail. The Court therefore finds that the murder of Officer Martin was committed in a cold, calculated and premeditated manner, without any pretense of moral or legal justification.
After reviewing the record, we agree with the trial judge. We hold that the murder of Officer Martin was cold, calculated, and premeditated beyond a reasonable doubt.
We reject the remaining issues raised by Griffin because they are without merit.[4] Though not specifically argued, we find no lack of proportionality with other death sentences approved by this Court. Accordingly, we affirm Griffin's convictions for first-degree murder and other offenses and his sentence of death.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] Tarallo pled guilty to second-degree murder, attempted first-degree murder, burglary, and two counts of grand theft. He received a thirty-year sentence and testified against Griffin.
[2] Prior to trial, the State filed a notice of its intent to admit testimony relating to the robbery of Mr. Pasco in his home pursuant to section 90.404(2)(b)(1), Florida Statutes (1991). Immediately prior to Mr. Pasco's testimony, the defense made a Williams rule objection to any testimony relating to the home invasion. The trial court allowed the testimony but read a limiting instruction to the jury before Mr. Pasco's testimony and again before the jury deliberations.

On appeal, both the defense and the State mistakenly characterize Mr. Pasco's testimony as Williams rule evidence. Mr. Pasco's testimony is not similar fact evidence. Therefore, it is admissible only if it is relevant and not unduly prejudicial.
[3] "Got paid" is slang for a successful robbery.
[4] Griffin also contends that: the trial court erred in denying a motion to impanel a new jury for sentencing, and the trial court erred in denying a motion to suppress certain statements by Griffin. We note that the State did not present the statements to the jury.