701 So.2d 362 (1997)
STATE of Florida, Petitioner,
v.
Charles H. COHENS, Respondent.
No. 97-01994.
District Court of Appeal of Florida, Second District.
October 22, 1997.
Robert A. Butterworth, Attorney General, Tallahassee, and Robert J. Krauss, Assistant Attorney General, Tampa, Bernie McCabe, State Attorney, and Robert M. Lewis, Assistant State Attorney, Clearwater, for Petitioner.
Bob Dillinger, Public Defender; Craig LeValley, and Allyn Giambalvo, Assistant Public Defenders, Clearwater, for Respondent.
*363 PER CURIAM.
On a petition for writ of certiorari, the State seeks review of a trial court ruling prohibiting the introduction of certain evidence at the first-degree murder trial of the respondent, Charles H. Cohens. The State properly challenges the nonfinal pretrial evidentiary ruling through a petition for writ of certiorari. See State v. Pettis, 520 So.2d 250 (Fla.1988); State v. Dennis, 696 So.2d 848 (Fla. 2d DCA 1997). Entitlement to the issuance of the writ turns on whether the ruling violated a clearly established legal principle, resulting in material injustice. Id. The ruling here constitutes such a violation. We, therefore, grant the petition, issue the writ, quash the ruling, and remand with instructions to allow the subject evidence.
Cohens and his codefendant, Kenneth Butler, have been charged with first-degree murder for the shooting death of a clerk at an Exxon Food Mart located at 3334 15th Avenue South in St. Petersburg. The incident allegedly occurred at 4:05 p.m. on May 23, 1996. The State sought to introduce evidence that Cohens and Butler attempted to rob the Flowers Bakery at 527 49th Street South at approximately 3:30 p.m. the same day.[1] The State argued that such was admissible as either Williams[2] Rule evidence pursuant to section 90.404(2), Florida Statutes (1995), or as inextricably intertwined evidence. The trial court, however, granted Cohens' motion to preclude that evidence.
According to deposition testimony, Cohens made a statement to the police indicating that he and Butler drove to the Flowers Bakery in Cohens' green, four-door vehicle. Both men were allegedly wearing white tee shirts and shorts. Cohens stated he had a black .38 caliber revolver, and that Butler had a chrome .25 caliber pistol. Butler remained near the front door of the establishment as a lookout, while Cohens approached the clerk, pointed his revolver at her, and demanded money. The clerk pushed the alarm button, and the pair fled the store, escaping in Cohens' vehicle. Cohens indicated that, when they returned to Cohens' home, Butler blamed him for the failed robbery and stated that he was going to do another robbery with or without Cohens. Cohens stated Butler took both guns and left. Cohens advised the police he was not involved in anything that occurred thereafter.
Johnny Daniels testified in deposition that Cohens told him that he dropped Butler off at the back of the Exxon Food Mart and informed Butler that he was not going to take part in the robbery. Cohens allegedly stated that after dropping Butler off, he drove to his cousin's house, parked his car, and walked back to the Exxon station, where he observed a number of schoolchildren outside. Inside the store, he saw Butler and the clerk struggling over Butler's gun. He then saw Butler back up, point the gun at the clerk, and shoot him. Cohens purportedly ran back to his car, left the area, and "guessed" that Butler followed him.
Jamaal Caldwell was one of the schoolchildren outside the store on the day of the shooting. His deposition testimony reflects that he knew Cohens through Cohens' cousin who lived in the neighborhood. He stated that he saw Cohens and another man inside the store and both had guns. Cohens stood behind the man who fired the shot. He was wearing a white tee shirt and denim shorts, with a knit cap over his head. After the shooting, the suspects ran to Cohens' cousin's house, got in Cohens' green car, and drove off. Prior to his deposition, Jamaal Caldwell gave a sworn statement to the prosecution, indicating that Cohens stood outside the door of the Exxon Food Mart holding a gun with a black handle, while the other male went inside. At that point, Caldwell heard gunshots.
There was confusion among the other schoolchildren regarding whether both suspects went into the store. One of the children corroborated that Butler went into the store and shot the clerk, while Cohens remained outside. Another said both suspects went into the store, but that child did not *364 observe what Cohens was doing when Butler shot the clerk. Yet another child stated that when Butler entered the store, Cohens remained outside "watching out."
Though we agree with the trial court that the evidence of the earlier attempted robbery does not constitute Williams Rule or similar fact evidence, we conclude that such does constitute inextricably intertwined evidence and is, therefore, admissible at Cohens' first-degree murder trial. In Damren v. State, 696 So.2d 709 (Fla.1997), Damren and an accomplice entered mining grounds and burglarized a maintenance barn. While doing so, they were accosted by a duty technician, whom Damren bludgeoned to death. Damren was subsequently charged with first-degree murder, armed burglary, and aggravated assault. At trial, the state introduced evidence that Damren had gone to the mine several weeks earlier and stolen a generator. The supreme court held that that evidence was not "similar fact evidence," but was "integrally connected" to the crimes at issue, because it supported the State's theory that the defendant "possessed the specific intent to burglarize the premises" and refuted the defense that Damren "was too drunk to form the requisite specific intent to commit the burglary." The integrally connected evidence standard appears to be a genus of the inextricably intertwined evidence standard.
In this case, Cohens' intent is at issue. Because of the integral connection between the attempted robbery at the Flowers Bakery and the shooting at the Exxon Food Mart, the earlier incident can be used to prove that Cohens had the specific intent to commit a robbery at the second location.[3] It also establishes Cohens' motive for being present at the Exxon station and may be used to rebut any conclusions that may be drawn from Cohens' statement to Daniels that he did not intend to participate in the robbery and was merely present outside of the store.
Inextricably intertwined evidence or inseparable crime evidence may be admitted to establish the entire context out of which a criminal act arose. See Hunter v. State, 660 So.2d 244, 251 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 946, 133 L.Ed.2d 871 (1996). It may also be admitted because it is relevant and necessary to adequately describe the events leading up to the crime. See Griffin v. State, 639 So.2d 966, 969-70 (Fla.1994). Cohens claims that in the attempted robbery, he was the gunman and Butler was the lookout. Such evidence, if believed, could show that because Butler blamed Cohens for the failure of the attempted robbery, the men reversed roles in the Exxon station holdup. Thus, in that respect, the attempted robbery is necessary to explain Cohens' presence at the murder scene and what his role was. As to motive, the attempted robbery could show that Cohens' presence at the Exxon station was merely a second attempt to achieve a previously frustrated criminal goal.
By refusing to allow evidence of the attempted robbery as inextricably intertwined evidence, the trial court departed from the essential requirements of law. Its ruling prevented the State from presenting all the circumstances surrounding the shooting and stripped away substantial evidence of Cohens' intent to commit robbery. The trial court's ruling thus resulted in material injustice to the State.
Certiorari granted, remanded with instructions to admit the disputed evidence.
THREADGILL, A.C.J., and LAZZARA, J., concur.
ALTENBERND, J., concurs specially.
ALTENBERND, Judge, concurring.
I am not certain whether our jurisdiction in this case is based on common law certiorari or Florida Rule of Appellate Procedure 9.140(c)(1)(B). See State v. Richardson, 621 So.2d 752 (Fla. 5th DCA 1993); State v. Smith, 586 So.2d 1237, 1239 (Fla. 2d DCA 1991) (Altenbernd, J., concurring). If the *365 trial court had evaluated the evidence and exercised its discretion to exclude this testimony under the correct law, I doubt I would reverse such a decision.
The trial court's order explains that it wished to admit evidence of the attempted robbery at Flowers Bakery because that episode and the subsequent murder at the Exxon Food Mart were closely related in time and location, but felt compelled by our decision in Porter v. State, 671 So.2d 184 (Fla. 2d DCA 1996), to exclude such evidence. In Porter, we reversed the defendant's convictions because the trial court refused to sever two counts alleging crimes somewhat similar to the events in this case.
Although the analysis of the issues involved in a decision to sever counts and the analysis of the issues involved in a determination of whether events are inextricably intertwined are related, case law from one issue does not control the other. If Mr. Cohens had not pleaded guilty to the robbery at the bakery, I would agree that Porter would probably require the two crimes to be tried separately. In this case, however, a single jury will not be asked to decide a defendant's guilt or innocence on two separate offenses based on complete evidence of both events. Instead, the jury will merely hear limited evidence concerning the earlier attempted robbery while assessing Mr. Cohens involvement, if any, in the first-degree murder.
NOTES
[1] Cohens has already pleaded guilty to the attempted robbery at the Flowers Bakery.
[2] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[3] The indictment charged Cohens with premeditated murder in the death of the clerk. However the State may proceed at trial under a theory of premeditated murder or under a theory of felony-murder with the underlying felony being attempted robbery. See Lovette v. State, 636 So.2d 1304 (Fla.1994).