714 So.2d 1117 (1998)
D.M., a juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 97-2998.
District Court of Appeal of Florida, Third District.
July 15, 1998.
*1118 Bennett H. Brummer, Public Defender, and Lisa Walsh, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Sandra S. Jaggard, Assistant Attorney General, for appellee.
Before COPE, FLETCHER and SORONDO, JJ.
COPE, Judge.
D.M. appeals his adjudication of delinquency for sale of cocaine and possession of cocaine with intent to sell. We affirm on the charge of sale, but reverse on the charge of possession with intent to sell.
During a period of fifteen minutes, a surveillance officer observed D.M. and co-respondent A.E. standing on a sidewalk in front of a duplex. On three occasions, someone approached the duo and handed money to A.E. A.E. handed the money to D.M. While D.M. remained on the sidewalk, A.E. walked to a utility room at the rear of the duplex, returned from the utility room, and handed over a small object to the person who had paid the money. The officer could not see what was being handed over. In each instance the person who received the object then left the area.
After the fourth such transaction, the surveillance officer gave a signal and the person who had dealt with the duo was arrested down the street. The arresting officers recovered a cocaine rock. The officers then arrested D.M. and A.E. They were charged with sale of cocaine in the fourth transaction, and possession with intent to sell an "inventory" of packaged-for-sale cocaine rocks found in the utility room. D.M. and A.E. were tried together and convicted. However, this appeal is that of D.M. alone.
D.M. first contends that the trial court erred by allowing the officer to testify that D.M. appeared to be acting as a lookout. We disagree. The officer testified in this case that D.M. stood on the sidewalk and appeared to be looking for someone. D.M. always remained on the sidewalk while A.E. went to the utility room to retrieve cocaine. The officer testified that based on this conduct, D.M. appeared to be acting as a lookout. The officer was a veteran of four thousand drug arrests and was certainly qualified to testify that for the reasons stated, D.M. appeared to be acting as a lookout. See A.A. v. State, 461 So.2d 165, 166 (Fla. 3d DCA 1984); see also United States v. Daniels, 723 F.2d 31 (8th Cir.1983).
D.M. argues that the trial court erred by allowing the officer to testify that it is common in that area, or in any area where drugs are sold, for persons conducting hand-to-hand drug transactions to have a lookout posted to warn of police presence. D.M. contends that this testimony runs afoul of Lowder v. State, 589 So.2d 933 (Fla. 3d DCA 1991), which states that "every defendant has the right to be tried based on the evidence against him, not on the characteristics or *1119 conduct of certain classes of criminals in general." Id. at 935. We do not think that the testimony in this case is contrary to Lowder. In Lowder, the defendant had been arrested with over $1200 in his pocket. The State elicited testimony from the narcotics officer that "[p]eople who sell narcotics usually have cash in their pocket." Id. The State argued that the large amount of cash found on the defendant's person was evidence that he was involved in drug dealing. This court held that such testimony should have been excluded. See id.
In the present case, by contrast, there was no testimony that persons who stand in front of this particular duplex, or on sidewalks in this area, are persons who are acting as drug lookouts. Here, the officer simply testified to the well-known fact that lookouts are commonly used in drug transactions. While the officer drew the conclusion that D.M. was acting as a lookout, it was based on the officer's observations of D.M.'s specific behavior in standing on the sidewalk, receiving money, appearing to be looking for someone, and always remaining on the sidewalk while A.E. went to the utility room to visit the drug inventory. The testimony was permissible and did not contravene Lowder.
D.M. next argues that the trial court erred by overruling the defense objection that the State had failed to give the ten-day notice that it intended to offer evidence of other criminal offenses, see § 90.404(2)(b)1, Fla. Stat. (1997), namely, the surveillance officer's testimony about transactions one through three. Customers one through three had not been arrested, and so D.M. and A.E. were charged only with sale to customer four. D.M. contends that the testimony regarding customers one through three was testimony of other crimes, and should have been excluded for lack of the ten-day notice. The trial court overruled the objection.
We conclude that the objection was correctly overruled. Analyzing Federal Rule of Evidence 404(b), one court has said:
The extrinsic acts rule is based on the fear that the jury will use evidence that the defendant has, at other times, committed bad acts to convict him of the charged offense. In the usual case, the "other acts" occurred at different times and under different circumstances from the crime charged. The policies underlying the rule are simply inapplicable when some offenses committed in a single criminal episode become "other acts" because the defendant is indicted for less than all of his actions.
United States v. Aleman, 592 F.2d 881, 885 (5th Cir.1979) (citation omitted). Here, the surveillance officer observed a fifteen-minute episode of hand-to-hand street drug sales, after which D.M. was arrested. We do not think that the first three sales qualify as "other criminal offenses," § 90.404(2)(a), Fla. Stat., for which the ten-day notice must be given. See also U.S. v. Muscatell, 42 F.3d 627, 630 (11th Cir.1995); United States v. Montes-Cardenas, 746 F.2d 771, 780 (11th Cir.1984); United States v. Torres, 685 F.2d 921, 924 (5th Cir.1982); United States v. Weeks, 716 F.2d 830, 832 (11th Cir.1983); Foster v. State, 679 So.2d 747, 753 (Fla.1996) cert. denied, ___ U.S. ___, 117 S.Ct. 1259, 137 L.Ed.2d 338 (1997); Austin v. State, 500 So.2d 262, 265 (Fla. 1st DCA 1986).
Second, in any event, under the facts of this case, the testimony about the first three transactions was inseparable crimes evidence, that is, "evidence which is inextricably intertwined with the crime charged...." Griffin v. State, 639 So.2d 966, 968 (Fla. 1994). "It is admissible under section 90.402 because `it is a relevant and inseparable part of the act which is in issue.... [I]t is necessary to admit the evidence to adequately describe the deed.'" Id. (quoting Charles W. Ehrhardt, Florida Evidence § 404.17 (1993 ed.)) (other citations omitted). For such evidence, the ten-day notice requirement does not apply. See Griffin, 639 So.2d at 968.
Here, both respondents were charged with possession of the drug inventory which was inside the utility room. In order to prove this offense, the State was required to show dominion and control by the respondents over the drugs in the utility room. During the fifteen-minute surveillance, the officer observed four transactions and four trips to retrieve objects from the utility room. The evidence of the trips to and from the utility *1120 room was inextricably intertwined with the evidence of the sidewalk transactions. The evidence was properly admitted.
As his final issue, D.M. challenges the sufficiency of the evidence to support the charge that he possessed the cocaine which was in the utility room. This point has merit. As summarized in L.J. v. State, 578 So.2d 360 (Fla. 3d DCA 1991):
"[T]he law is clear that one is not guilty of possession [of a controlled substance] by virtue of aiding and abetting [a confederate in] a sale [of such substance]." Kickasola v. State, 405 So.2d 200, 201 (Fla. 3d DCA 1981). Indeed, Florida courts have consistently reversed convictions for unlawful possession of a contraband drug when based solely on such aiding and abetting evidenceoften where the defendant was heavily involved in the negotiations leading to, as well as the consummation of, the illicit sale of drugs, although without actually handling the drugs. By definition, the person who actually possesses a contraband drug has physical control over it with the power "to exclude others from like control," Brown on Personal Property 21 (1936)and while that physical dominion continues, another person obviously does not have the physical ability to maintain control over the drug or to reduce it to his physical possession, and, therefore, cannot actually or constructively possess it. Indeed, as the trial court below correctly observed," only one person at a time can handle one cocaine rockobviously, they can't both hold it." (T.176). Moreover, it has been held that a defendant who assists a confederate in selling or delivering a contraband drug does not, by so doing, aid and abet the confederate in the latter's actual possession of such drug because the defendant has not assisted the confederate in either acquiring or retaining the drug, but to the contrary, has actually aided the confederate in divesting the latter of any possession thereof. Daudt v. State, 368 So.2d 52, 54 (Fla. 2d DCA 1979). In sum, then, a person who aids and abets a confederate in selling or delivering contraband drugs, which are physically possessed by only the confederate, may be convicted of unlawful sale or delivery of said drugs, but not of unlawful possession of said drugs.
Id. at 362 (footnotes omitted and some citations omitted); see also Daudt, 368 So.2d at 53-54 (one who acted as "lookout" during sale not guilty of possessing marijuana by virtue of having aided and abetted sale).
Here, as in L.J., the evidence established that D.M. was aiding and abetting A.E. in the sale of cocaine. See § 777.011, Fla. Stat. (1997). Under the law as summarized in L.J., however, the evidence was legally insufficient to establish that D.M. was actually or constructively in possession of the cocaine in the utility room. See L.J., 578 So.2d at 360-63. During the fifteen-minute surveillance, D.M. always remained on the sidewalk, never entered the utility room, and never handled the cocaine. We therefore reverse the adjudication of delinquency on count two only.
Affirmed in part, reversed in part, and remanded with directions to discharge D.M. from count two only.