715 So.2d 1018 (1998)
Christopher PORTER, Appellant,
v.
STATE of Florida, Appellee.
No. 96-04306.
District Court of Appeal of Florida, Second District.
July 22, 1998.
*1019 James Marion Moorman, Public Defender, and A. Victoria Wiggins, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jean-Jacques Darius, Assistant Attorney General, Tampa, for Appellee.
PARKER, Chief Judge.
Christopher Porter appeals the final judgment adjudicating him guilty of resisting an officer with violence and battery on a law enforcement officer, arguing that the trial court erred in denying his motion in limine to exclude a prejudicial statement made by his wife to a deputy sheriff who had been dispatched to the Porter residence. We reverse.
Sarasota County Sheriff Deputy Walters testified to the following facts. Around 2:00 a.m. he received a call concerning a domestic violence incident. When he arrived at the Porter residence, he could hear screaming inside. When he opened the door, Porter's wife was sitting at the top of the staircase with Porter standing behind her, holding her by her shirt. Over Porter's objection, Deputy Walters was permitted to testify that as he entered the residence he heard the wife yell out: "He's trying to kill me."
Another deputy sheriff arrived at the scene. Although there was considerable conflict between the testimony of the two deputies and Porter, it is clear that Porter was ordered to sit in a chair on the ground floor while Porter's wife remained upstairs. When Porter stood up, a struggle ensued. Thereafter, the deputies placed Porter on the floor, handcuffed his arms behind his back, and placed him in leg restraints. Porter was placed face down in a deputy's vehicle. The deputies testified that at various times during this encounter, Porter swung his arms at the deputies, deliberately kicked both deputies, and continued to resist their attempts to control him. Porter's testimony was that the officers attacked him when he failed to obey their instruction to remain seated. He testified that he did not resist until he was pushed, face down, onto a couch and felt his vertebrae move, which caused him extreme pain. He testified that, at that point, he rolled around in pain, but did not kick or strike either of the deputies.
Prior to trial, Porter had filed a motion in limine to prevent the jury from hearing the wife's statement: "He's trying to kill me." Section 90.403, Florida Statutes (1995), states in part: "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice...." The State argues that the probative value of the wife's statement was not *1020 substantially outweighed by the danger of unfair prejudice because "the statement was an inextricable part of the crimes." In State v. Cohens, 701 So.2d 362, 364 (Fla. 2d DCA 1997), this court stated: "Inextricably intertwined evidence or inseparable crime evidence may be admitted to establish the entire context out of which a criminal act arose. It may also be admitted because it is relevant and necessary to adequately describe the events leading up to the crime." (Citations omitted).
We conclude that the wife's statement was not inextricably intertwined with the crimes for which Porter was charged. There was a clear break between the wife's statement and Porter's altercation with the deputies. The only relevance to the wife's out-of-court statement was to explain the deputies' presence at the Porter residence. However, the deputies' presence was sufficiently explained by Deputy Walter's testimony that he received a call concerning a domestic violence incident. There was no need to reveal the wife's statement because the deputies' legal duty to be present was never called into question.[1] Thus, the wife's statement was not relevant to any material issue in the case. It is well settled that "an out-of-court statement which is offered for a purpose other than proving the truth of its contents is admissible only when the purpose for which the statement is being offered is a material issue in the case." State v. Baird, 572 So.2d 904, 907 (Fla.1990).
Clearly, the admission of an out-of-court statement accusing the defendant of the collateral crime of attempted murder is prejudicial. Therefore, we conclude that the limited probative value of the wife's statement was substantially outweighed by the danger of unfair prejudice. See Henry v. State, 574 So.2d 73, 74-75 (Fla.1991).
Finally, the admission of the wife's statement, and the State's argument addressing it, cannot be considered harmless error. The Florida Supreme Court, in State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986), stated:
The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. Application of the test requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.
(Citations omitted).
In this case, Porter's hypothesis of innocence was that the deputies attacked him when he failed to obey their instruction to remain seated. Porter's testimony was in direct conflict with the deputies' testimony, and there were no other witnesses to Porter's conduct. Thus, this case essentially came down to a credibility contest between Porter and the deputies. Under these circumstances, the State has failed to prove that the wife's prejudicial statement did not contribute to the verdict beyond a reasonable doubt. This is especially true where the wife's statement was referenced multiple times throughout the trial, including during the prosecution's opening statement and closing argument. Therefore, the error cannot be considered harmless.
Reversed and remanded.
BLUE and NORTHCUTT, JJ., concur.
NOTES
[1] The defense was even willing to stipulate that the officers had a legal duty to be present, but the State rejected the stipulation.