POLEN, J.
Appellant seeks review of his conviction and sentence for attempted second-degree murder with a firearm. Appellant raises three issues on appeal, but we write only to address his argument that the trial court erred in admitting testimony about the shooting and death of another individual during the same incident. We agree with the State that the subject testimony was inextricably intertwined, and affirm.
Appellant was charged with attempted first-degree murder with a firearm. The charge arose from a fight at an apartment complex, during which Justin Matthews was shot. Justin identified appellant as the shooter. Prior to trial, the defense moved in limine to prohibit testimony about the shooting and death of Sharod Smith during the same incident. The State asserted that witness Eric Frazier (Justin’s brother) would testify that he saw appellant shoot Sharod. The State argued that Eric’s testimony was relevant because the shooting of Sharod was “inextricably intertwined” with the shooting in this case, and was also admissible as Williams[1] rule evidence, to prove identity, opportunity or motive.
Eric testified that he and Sharod were best friends. At the time of the shooting, Sharod lived in the Dillard neighborhood with his mother. Eric, then fifteen years old, lived with them. The two boys grew up in another neighborhood, which seemed to upset the kids in Dillard. Three weeks before the shooting, Eric and Sharod fought with Dillard kids.
On the evening in question, the two boys passed the Dillard kids while walking to Sharod’s house. The Dillard kids were “talking like junk, like they wanted to fight,” and one of them shot a gun into the air. There were about twenty boys outside of Sharod’s apartment. Once inside the apartment, Eric called his brother Justin to pick him up.
A few minutes later, Justin arrived at Sharod’s apartment. As they all walked out, the Dillard boys surrounded them, and a fight broke out. Eric heard a gunshot and turned to see Sharod fall to the ground. He saw appellant with a gun in his hand. Sharod jumped back up and ran towards his house; Eric ran after him. Appellant shot again at Eric and Sharod. Once inside Sharod’s house, Eric saw him on the floor, bleeding. Eric heard another gunshot from outside.
Five days after the incident, Eric was asked to identify the shooter in a photo lineup. Eric was unable to do so, because he was too upset. Sharod was his best friend, and had died from his gunshot wounds.
Eric returned to the police station several weeks later, and identified appellant as the shooter. Eric did not know appellant, but referred to him as “Bookey’s brother.” Eric had seen appellant around the neighborhood before the shooting incident.
Justin, the victim in the ease being tried, also testified to the events on the day of the shooting. He received a call from his younger brother Eric, and Eric’s best friend, Sharod, who said that boys outside Sharod’s apartment were trying to jump on them. Justin agreed to come and get them, and drove over to Sharod’s house. Justin got out of the car and walked up to *250 appellant who was leaning on a car, and asked him if he saw anyone fighting. Appellant said no and pointed out Sharod’s apaz*tment.
Justin proceeded to Sharod’s apartment and picked up his brother. As they walked out, there were twenty people from Dillard standing around. A fight broke out. Justin was fighting someone he did not know, when he turned around and saw appellant in his face with a gun. Appellant shot Justin. Appellant continued to pull the trigger, but either there were no more bullets or the gun jammed. Justin ran towards a friend’s car and jumped in. Several more shots were fired at the car, though Justin could not see who was shooting. While in the hospital, Justin picked appellant out of a photo lineup. Justin did not see anyone else with a gun during the fight.
The State argued that the jury needed to hear the evidence regarding the shooting of Sharod Smith, because the events leading up to that shooting also led up to the shooting of the victim in this case, Justin Matthews. Specifically, the State argued:
It happens at Sharod’s house, in Shar-od’s neighborhood. It happens because of a problem that Sharod and Eric Frazier are having with the neighborhood guys in Dillard. We’ve heard from Eric Frazier that he saw the defendant frequenting in the area. He’s one of the neighborhood guys, knew him as Bookie’s [sic] big brother who is another neighborhood guy. Had this case not been lost to a speedy trial issue, the State’s of the firm belief that the two counts would be tried together. You have two shootings that happen moments from one another. In order for the jury to really have an understanding and hear all the evidence in the context of the witnesses, they need to hear about the shooting of Sharod and the shooting of Justin Matthews. It’s not, as defense counsel has couched it, that I want to put [appellant] in a bad light and inflame the jury. I don’t. It really is relevant to the shooting of Justin Matthews.
The State argued further, that the evidence was necessary to explain Sharod’s absence, and why Eric was initially unable to identify appellant:
[T]he jury is going to hear about Shar-od’s house, about Sharod’s fight, about the friendship of Eric and Sharod, but they’re not going to hear from Sharod. The reason they’re not going to hear from Sharod is because Sharod is dead. Sharod is dead because of the criminal conduct that took place that day. So that’s one reason.
Another reason why it’s so important is because according to Eric Frazier he can’t make an ID of [appellant] because he’s so distraught over the death of Sharod. So that’s another reason why the evidence of Sharod’s death needs to come into Justin’s trial.
The State also argued the evidence was relevant and should be admitted pursuant to Williams, as it went to prove intent, motive and identity.
The trial court denied appellant’s motion in limine, finding the evidence of Sharod Smith’s shooting was inextricably intertwined with the circumstances of the shooting of Justin Matthews. The court also found the evidence was relevant to show identity, intent and opportunity. The court further noted that the fact of Sharod’s death was important, “to explain why he didn’t testify at trial.” The court ruled that as long as the State did not make Sharod’s death a feature of the trial, and did not use the word “murder,” then the probative value outweighed any prejudicial effect.
*251 At trial, Eric Frazier testified as he did during the Williams rule hearing. A few weeks before the incident, he and Sharod fought with the guys from Dillard. On the day of the incident, he and Sharod were walking to Sharod’s house, when they encountered about twenty Dillard guys, who were “talking trash” like they wanted to fight. Someone fired a gunshot in the air, and Eric called his brother Justin to come and get him. Justin came and, as they left Sharod’s apartment, they were surrounded.
A fight broke out and Eric heard gunshots. Eric saw Sharod fall, and saw appellant with a gun in his hand. Sharod jumped up and he and Eric ran towards Sharod’s apartment; appellant continued shooting at them. Once inside Sharod’s house, Eric saw that Sharod was shot. Eric learned that his brother Justin had also been shot, but Eric did not see the person who shot Justin.
In an initial statement to police, Eric said that he saw only Bookey Miller with a gun. Eric was unable to identify appellant as the shooter, immediately after the incident. Two months later, Eric picked appellant out of a photo lineup as the person who shot Sharod. •
Justin also testified as he did during the pretrial hearing, describing how his brother Eric called him about a situation in Dillard where boys were trying to jump him. When Justin arrived at the apartment complex he saw appellant leaning against a car. Appellant pointed to Shar-od’s apartment. Justin then proceeded to Sharod’s apartment to get Eric and Shar-od. When they left the apartment, a fight broke out.
During the fight, Justin came face to face with appellant. Appellant shot Justin and then pulled the trigger again, but the gun jammed. Justin looked at appellant for about five seconds, then looked down and saw he was shot. Justin ran to a friend’s car and jumped in.' Someone continued shooting at the car.
While Justin was in the hospital, he identified appellant to detectives from a photo lineup. Justin did not know appellant prior to the shooting.
Various guns, shell casings and ammunition were found in the area of the fight. No fingerprint matches were found on any of the firearms. Six .38 caliber projectiles that were recovered from the scene, including one that contained Justin’s blood, were all shot from the same firearm, which was never recovered.
During closing, pursuant to the pretrial ruling on appellant’s motion in limine, the trial court advised the jury that Sharod Smith had died prior to these proceedings.
At the conclusion of trial, the jury found appellant guilty of the lesser included offense of attempted second-degree murder with a firearm. The jury also found that, during the commission of the offense, appellant possessed and discharged a firearm, and caused great bodily injury.
Appellant argues that the trial court erred in allowing evidence about the shooting of Sharod Smith to be admitted at trial, because the evidence was not necessary to prove any material, contested facts in issue and the prejudicial nature of that evidence far outweighed its probative value. The State responds that the evidence was properly admitted because the two shootings, which occurred during the same melee, were inextricably intertwined. We agree with the State and affirm.
“A trial court has wide discretion concerning the admissibility of evidence, and, in the absence of an abuse of discretion, a ruling regarding admissibility will not be disturbed.” Jent v. State, 408 So.2d 1024, 1029 (Fla.1981). To that end,
*252 evidence of uncharged ci’imes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is not Williams rule evidence. It is admissible under section 90.402 because “it is a relevant and inseparable part of the act which is in issue.... [I]t is necessary to admit the evidence to adequately describe the deed.”
Griffin v. State, 639 So.2d 966, 968 (Fla.1994) (quoting Charles W. Ehrhardt, Florida Evidence § 404.17 (1993 ed.)) (emphasis added); accord Thomas v. State, 885 So.2d 968, 975 (Fla. 4th DCA 2004).
We find that the facts relating to the shooting of Sharod Smith were inextricably intertwined with the facts pertaining to the shooting of Justin Matthews, as both shootings occurred during one big episode. As the State notes, the evidence adduced below included “many firearms and much ammunition, which was apparently dumped at the scene some time after the shooting incident.” Because of this evidence, the State needed to establish that the shot fired at Justin was not simply one of many that were unintentionally fired in his direction. Further, the testimony that Eric and Sharod fought with the Dillard group a few weeks before this incident, and that Sharod and Justin (Eric’s brother) were shot during the same melee, was necessary to show that appellant, one of the Dillard group, intentionally chose his victims. The subject testimony placed Justin’s shooting in context, and also accounted for Sharod’s absence during the trial. See Henry v. State, 649 So.2d 1366, 1368 (Fla.1994) (finding the facts in question relating to the two murders inextricably intertwined, placing the evidence of the murder being tried in context and accounting for a witness’s absence at trial).
Because we find that the evidence of Sharod Smith’s shooting, as given by Eric Frazier, was inextricably intertwined with the circumstances of the shooting of Justin Matthews, we need not address whether Eric’s testimony was properly admitted pursuant to the Williams rule. We affirm on the remaining issues without comment.

'Affirmed.

CIKLIN and LEVINE, JJ., concur.

. Williams v. State, 110 So.2d 654 (Fla.1959).