963 F.2d 1426
 22 Fed.R.Serv.3d 1381, 75 Ed. Law Rep. 205
 Anthony T. LEE, et al., Plaintiffs-Appellants,
United States of America, Plaintiff-Intervenor, Appellee,
National Education Association, Inc., Plaintiff-Intervenor,
v.
TALLADEGA COUNTY BOARD OF EDUCATION, Lance Grissett, Kenneth
Armbrester, M. R. Watson, et al., Defendants-Appellees.
 No. 88-7471.
 United States Court of Appeals,
Eleventh Circuit.
 June 15, 1992.
 
 Cleophus Thomas, Jr., Anniston, Ala., Norman J. Chachkin, Janell M. Byrd, New York City, for plaintiffs-appellants.
 Ralph D. Gaines, Jr., George C. Douglas, Jr., Gaines, Gaines & Gaines, Talladega, Ala., Dennis J. Dimsey, Thomas E. Chandler, Appellate Section, Civil Rights Div., U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT, Chief Judge, CLARK*, and SMITH**, Senior Circuit Judges.
 TJOFLAT, Chief Judge:
 
 
 1
 This is an appeal from an order of the United States District Court for the Northern District of Alabama denying the appellants' motion to reopen a school desegregation case so that the injunctive orders previously entered against the school system could be reinstated and enforced. Because we hold that the district court was without authority to reopen the case and that all relevant injunctions were dissolved in 1985, we affirm the district court's order.
 
 I.
 
 2
 This case is part of a statewide class action brought in 1963 on behalf of black school children in Alabama to desegregate the public schools of that state. The appellee is the Talladega County Board of Education (the TCBE or the Board) which operates the Talladega County School System.[1] In 1967, the district court concluded that a dual school system based upon race was maintained and operated throughout the state. The court ordered statewide desegregation and directed each school system within the state to adopt a desegregation plan that met the standards set forth in the court's order. Lee v. Macon County Bd. of Educ., 267 F.Supp. 458 (M.D.Ala.), aff'd sub nom. Wallace v. United States, 389 U.S. 215, 88 S.Ct. 415, 19 L.Ed.2d 422 (1967).
 
 
 3
 In response to the court's 1967 order, the TCBE proposed a desegregation plan. This plan, however, proved ineffective, and the district court ordered the Board to submit a new plan for the 1970-71 school year. The district court approved the plan subsequently submitted, as supplemented and modified, on February 3, 1970. Court orders later in 1970 and in 1971 modified this plan still further.
 
 
 4
 On November 7, 1983, the TCBE filed a "Motion for Court to Relinquish Jurisdiction," contending that the school system had become unitary and asking the court to relinquish jurisdiction and control over it. The Board later amended its motion by filing a "Resolution," which it had adopted on November 22, 1983, stating that the Board would operate the school system "at all times so as to conform with the United States Constitution, laws passed by Congress, and all previous orders of th[e district c]ourt...." The resolution also declared that the TCBE had complied in good faith with all court orders, had eliminated all vestiges of prior discrimination, and had been operating a "totally integrated, unitary system" for many years.
 
 
 5
 On March 13, 1985, the district court approved a "Joint Stipulation of Dismissal" agreed to by all the parties. The joint stipulation incorporated the TCBE's resolution. That same day, the court also entered a "Judgment and Order" stating that, in view of the parties' joint stipulation, the case should be dismissed. The court declared that the Talladega County School System had achieved unitary status, entered final judgment in accordance with Fed.R.Civ.P. 54(b), and dismissed the case. The court, however, did not dissolve explicitly the injunctive orders that had been entered against the TCBE.
 
 
 6
 More than three years after the district court dismissed this action, on July 21, 1988, the appellants moved the district court to reopen the case, to reinstate the injunctive orders previously entered against the TCBE, and to grant them additional equitable relief. The motion contained three main allegations: (1) that the TCBE had engaged in racial discrimination by closing schools in the black community, changing the names of schools named after black persons, and planning new construction to avoid assigning white students to an historically black school; (2) that the Board had implemented a transfer policy that allowed students to attend school out of their assigned attendance zones or districts, which resulted in segregation in contravention of outstanding court orders; and (3) that the Board had not implemented promised affirmative action plans for faculty and staff.[2] To remedy this situation, the appellants asked the court to reinstate the injunctions previously entered in the case and to enjoin the Board's "illegal" school closings, its construction of new schools, and its approval of inter- and intra-district transfers. Finally, the appellants asked the court to require the Board to implement affirmative action plans for faculty and staff.
 
 
 7
 The appellants argued that the district court had jurisdiction to reopen the case and enforce its earlier orders for several reasons. First, they noted that the district court had not vacated expressly the earlier injunctions; thus, they argued, the outstanding orders remained binding on the Board. Second, they argued that, as part of the stipulated dismissal of the case, the Board had agreed to abide by all outstanding court orders; therefore, the appellants were entitled to return to court to enforce this agreement. Finally, the appellants argued that the case should be reopened pursuant to Fed.R.Civ.P. 60(b)(5) because there "ha[d] been a fundamental change in the legal predicates upon which [the] dismissal [wa]s based." In relation to this last point, the appellants argued that when the district court issued its order declaring that the Talladega County School System had achieved unitary status, that term was not interpreted to mean that a school system had eliminated the vestiges of its prior discrimination and, thus, did not signal that the litigation involving the school district had run its course.
 
 
 8
 On July 25, 1988, the district court denied the appellants' motion to reopen the case. The court stated that when it dismissed the case in 1985 "there was no retention of jurisdiction by th[e] court and there remained no residual injunction requiring Talladega County Board of Education to do or not to do anything." The whole point of the dismissal, the court noted, "was to require that any party who found the dismissal erroneous do something about it then." The court concluded that the appellants could obtain the relief they sought only by filing a new lawsuit.
 
 
 9
 This appeal followed. We affirm the district court's order.
 
 II.
 
 10
 We first reject the appellants' contention that the court orders enjoining the TCBE, because they were never expressly vacated, remain enforceable even though the district court has declared that the Talladega County School System has attained unitary status and has dismissed the case. By operation of law, the orders enjoining the TCBE were dissolved when the district court declared that the school system had attained unitary status. This is so because the limited nature of a federal court's remedial powers as well as the fundamental limitations of federalism render continuing federal judicial supervision of local school authorities incompatible with a finding of unitary status. See Board of Educ. of Oklahoma City Pub. Schs. v. Dowell, --- U.S. ----, ----, 111 S.Ct. 630, 637, 112 L.Ed.2d 715 (1991); United States v. Overton, 834 F.2d 1171, 1174 (5th Cir.1987).
 
 
 11
 Injunctive decrees in school desegregation cases were never intended to operate in perpetuity. Dowell, --- U.S. at ----, 111 S.Ct. at 637. Rather, federal supervision of a local school authority that has operated a racially dual system is a temporary measure that should last only as long as necessary to remedy past racial discrimination. Id. The purpose of a school desegregation decree is to effect a transition from a school system tainted with state-imposed segregation to a racially nondiscriminatory school system. See Brown v. Board of Educ., 349 U.S. 294, 301, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955); Green v. New Kent County Sch. Bd., 391 U.S. 430, 436, 88 S.Ct. 1689, 1693, 20 L.Ed.2d 716 (1968).
 
 
 12
 We stress the temporary nature of federal judicial supervision over local school systems "because '[n]o single tradition in public education is more deeply rooted than local control over the operation of schools, Milliken v. Bradley, 418 U.S. 717, 741, 94 S.Ct. 3112, 3125, 41 L.Ed.2d 1069 (1974) (Milliken I), and because no one's interest is furthered by subjecting the nation's educational system to 'judicial tutelage for the indefinite future,' Dowell, [--- U.S. at ----, 111 S.Ct. at 638]." Freeman v. Pitts, --- U.S. ----, ----, 112 S.Ct. 1430, 1453, 118 L.Ed.2d 108 (1992) (Scalia, J., concurring). As the Supreme Court recently noted:
 
 
 13
 Returning schools to the control of local authorities at the earliest practicable date is essential to restore their true accountability in our governmental system. When the school district and all state entities participating with it in operating the schools make decisions in the absence of judicial supervision, they can be held accountable to the citizenry, to the political process, and to the courts in the ordinary course.
 
 
 14
 Freeman, --- U.S. at ----, 112 S.Ct. at 1445. See also Dowell, --- U.S. at ----, 111 S.Ct. at 637 ("Local control over the education of children allows citizens to participate in decisionmaking, and allows innovation so that school programs can fit local needs."). Thus, the "end purpose" of every court that supervises the disestablishment of a racially dual school system "must be to remedy the [constitutional] violation and in addition to restore state and local authorities to the control of a school system that is operating in compliance with the Constitution." Freeman, --- U.S. at ----, 112 S.Ct. at 1445.
 
 
 15
 When local school authorities demonstrate that they have complied in good faith with the district court's desegregation decree and that the vestiges of their prior illegal racial discrimination have been eliminated to the extent practicable--in short, that their school system has attained unitary status--the court should and must return control over their school system to the local school authorities. Dowell, --- U.S. at ----, 111 S.Ct. at 636-38. This rule follows from the settled principle that the remedial authority of the federal judiciary "may be exercised only on the basis of a constitutional violation," Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971), and is limited to redressing the constitutional violation itself. Freeman, --- U.S. at ----, 112 S.Ct. at 1445. See also Dowell, --- U.S. at ----, 111 S.Ct. at 637 ("The legal justification for displacement of local authority by an injunctive decree in a school desegregation case is a violation of the Constitution by the local authorities."); Milliken v. Bradley, 433 U.S. 267, 282, 97 S.Ct. 2749, 2758, 53 L.Ed.2d 745 (1977) ("federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation"). The attainment of unitary status means that the school authorities have remedied their constitutional violation. The transition to a racially non-discriminatory school system is complete and the federal judiciary's remedial authority has come to an end.
 
 
 16
 In the instant case, the district court found in March 1985 that the Talladega County School System had achieved unitary status.[3] This finding implicitly dissolved the injunctions in effect at that time. Accordingly, when the appellants repaired to the district court in July 1988 seeking "to enforce existing court orders" against the TCBE, the court correctly concluded that there were no existing court orders applicable to the TCBE.
 
 III.
 
 17
 The appellants also argue that they are entitled to an order compelling the TCBE to comply with the desegregation orders previously entered in this case because the joint stipulation of dismissal, in view of which the district court dismissed this case, incorporated the TCBE's resolution of November 22, 1983 in which the Board stated that it would continue to operate the Talladega County School System "so as to conform with ... all previous orders of th[e district c]ourt." The appellants' argument raises the issue of whether limitations on the federal judiciary's equitable powers, see supra part II, would preclude a federal court from enforcing such an agreement. We need not and do not decide this issue today, however, because we hold that the language in the TCBE's resolution cannot be read as creating any enforceable obligation.
 
 
 18
 We cannot construe the joint stipulation, as the appellants would have us construe it, as either a "settlement agreement" or a "consent decree."[4] The stipulation of dismissal is not a contract between the parties but merely an acknowledgement by the parties that the Talladega County School System had achieved unitary status and, thus, that the injunctions against the TCBE were due to be dissolved and the case dismissed. Moreover, incorporation of the TCBE's resolution did not create an enforceable contract; when the resolution is read as a whole[5] and in the context of the contemplated dismissal of the case, it is plain that it did not create any obligation enforceable against the TCBE.
 
 
 19
 The language of the resolution suggests that it merely represents the good faith aspirations of the TCBE to continue to obey the law. While the resolution proclaims that the Board will act in conformity with previous court orders, neither the resolution nor the stipulation mentions anything about a party returning to court to enforce the court orders. To the contrary, the documents state repeatedly and explicitly that the time has arrived for this case to end. Indeed, the resolution was adopted in support of the TCBE's motion "asking the Court to enter an order relinquishing jurisdiction and control over the operation" of the school system. (Emphasis added.) The sense of finality in the resolution is inconsistent with the notion that a party would enjoy the right to petition the court years later to enforce earlier court orders. Finally, we are at a loss as to why the TCBE would ask the court to relinquish jurisdiction and control if this meant only that the TCBE would indefinitely remain subject to federal court supervision. In sum, the district court did not, as the appellants claim, "refuse to implement its own order." There was nothing for the court to implement after the March 13, 1985 dismissal on a finding of unitary status.
 
 IV.
 
 20
 The appellants' final argument on appeal is that the district court abused its discretion in refusing to grant them relief pursuant to Fed.R.Civ.P. 60(b)(5). This rule provides for relief from a final judgment where "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." The appellants contend that if the effect of a declaration of unitary status is the automatic vacation of all outstanding court decrees, that was not the law when this case was dismissed, is contrary to the intent of the joint stipulation, and reflects such a change in the underlying predicates upon which dismissal was granted as to warrant relief from the judgment under Fed.R.Civ.P. 60(b)(5).
 
 
 21
 The district court did not abuse its discretion in denying the appellants' requested relief. Final judgment in this case was entered against the TCBE in 1967 when the district court found that the Board was operating a racially segregated school system in violation of the Constitution. At that time, the court enjoined the Board from operating a dual system in the future. The court's March 1985 order merely recognized that the TCBE had done all that it had to do to be freed of the court's supervision and implicitly dissolved the injunctions that the court had imposed in 1967. The March 1985 order is not a final judgment within the purview of Rule 60; indeed, the order, although labeled "Judgment and Order," is not a judgment at all. Moreover, this order has no prospective application. Thus, rule 60(b)(5), which applies only to judgments that have prospective effect, is inapplicable. See Cook v. Birmingham News, 618 F.2d 1149, 1152 (5th Cir.1980).
 
 V.
 
 22
 Based on the foregoing, we AFFIRM the district court's denial of the appellants' motion to reopen, to reinstate the injunctive orders against the appellee, and to grant the appellants further equitable relief.
 
 
 23
 IT IS SO ORDERED.
 
 
 
 *
 See Rule 32-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 This case began in 1963 in the United States District Court for the Middle District of Alabama as a class action seeking to desegregate the public schools of Macon County, Alabama. The next year, the appellants amended their complaint to include every school district in Alabama. In 1970, the district court divided the case into separate parts, each involving a separate school district, and transferred these parts to the district court having territorial jurisdiction over them. This case, involving the Talladega County School System, was transferred to the Northern District of Alabama
 
 
 [2]
 The merits of the appellants' allegations are not at issue in this appeal
 
 
 [3]
 The appellants assert that district court's use of the term "unitary status" in its order dismissing the case is ambiguous; thus, this court should remand this case to the district court for a determination as to whether the TCBE had complied in good faith with the original desegregation decree, and whether the vestiges of past discrimination had been eliminated to the extent practicable. In light of the parties' stipulation in 1985, upon which the district court relied, that the TCBE "has complied in good faith" with all court orders and that "there is not ... any vestige of racial segregation remaining in the Talladega County System," we find no ambiguity in the district court's use of the term "unitary status."
 
 
 [4]
 The Joint Stipulation of Dismissal states in its entirety:
 By order dated February 3, 1970, the Court required the Talladega County School System to implement a plan of desegregation designed to convert the System to a unitary school system. On November 7, 1983, the Talladega County School System filed a Motion for Court to Relinquish Jurisdiction which claims that the School System has made every effort to fully implement and comply with the orders entered in this case. Subsequently, the School System amended this Motion by filing a Resolution of the Talladega County Board of Education, adopted November 22, 1983, which commits the Board to maintaining a unitary, nondiscriminatory School System. The Resolution is attached to this Stipulation as Exhibit A and is incorporated herein.
 The parties have reviewed the Motion of the Talladega County School System and its operation under the orders entered in this case. It is agreed by all the parties that these orders have been implemented in a manner that is adequate for establishment of a unitary school system in Talladega County.
 In view of this agreement and in view of the attached Resolution, the parties conclude that dismissal of this cause of action, as it applies to the Talladega County School System, is appropriate at this time.
 
 
 [5]
 The Resolution of the TCBE states in its entirety:
 WHEREAS the Talladega County Board of Education was made a party to and has been subject to the orders and decrees of the United States District Court for the Northern District of Alabama in Case No. CA 70-251-S, which is styled Anthony T. Lee, et al., plaintiffs, United States of America and National Educational Association, Inc., plaintiff-intervenors, versus Macon County Board of Education, et al., defendants and said Court entered an order requiring the total integration of all schools in the Talladega County System as to students and faculty, and
 WHEREAS the Talladega County Board of Education, in accordance with said order and all other directives and decrees of this Court and the laws and regulations of the United States of America has complied in good faith and there now exists in the Talladega County School System a totally integrated, unitary system and such system has existed for many years, and
 WHEREAS, the Talladega County Board of Education has determined that there is not now and has not been since the adoption and installation of the desegregation plan of this system, any vestige of racial segregation remaining in the Talladega County System and the Board is adopting this resolution in support of its motion asking the Court to enter an order relinquishing jurisdiction and control over the operation of the Talladega County System.
 NOW THEREFORE, in support of and in furtherance of said motion, BE IT RESOLVED that:
 
 
 [1]
 The Talladega County System shall be operated at all times so as to conform with the United States Constitution, laws passed by Congress, and all previous orders of this Court and the following paragraphs of this Resolution are adopted subject to this policy
 
 
 [2]
 The Talladega County Board and its officers and employees shall never adopt any policy or program, institute any practice or procedure, or make or carry out any decision for the purpose of discriminating against any person by reason of race, color, or ethnic identification and the following paragraphs are adopted subject to this policy
 
 
 [3]
 The primary goal, objective and policy of this Board and all officers and employees of this School District is and shall continue to be to provide the maximum educational opportunity that can be made available to every student in every school of the Talladega County District by the prudent, efficient and effective use of the resources available to this School District
 
 
 [4]
 Every member of this Board, and all officers and employees of the Talladega County System shall continue to adopt, maintain and implement affirmative action programs designed to improve racial integration among students, faculty and administrative staff of the School System
 
 
 [5]
 One of the factors to be taken into consideration in determining the desirability of a proposed policy, program, practice, procedure or decision of the Talladega County System is whether its adoption and implementation will tend to enhance racial integration among students, faculty, and/or administrative staff of the System
 
 
 [6]
 It shall be the policy and practice of the Talladega County Board, its officers and employees and all those connected with this System to review the policies, programs, practices, procedures and decisions of the Talladega County System, from time to time, to see whether they appear to be having an adverse effect upon racial integration among the students, faculty and/or administrative staff of the School System and, should such an effect be apparent, to determine whether and how the policy, program, practice, procedure or decision of the School System may be modified without substantially impairing its educational efficacy so as to eliminate or diminish such adverse effect
 
 
 [7]
 The Talladega County Board of Education will earnestly and in good faith endeavor to maintain a unitary school system with the utmost harmony and good will among all students, faculty members and the populace of the areas of Talladega County served by this System