[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  14-14851-P
_____

MICHAEL ALLEN GRIFFIN,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

Before:  ED CARNES, Chief Judge, WILLIAM PRYOR and JULIE CARNES,
Circuit Judges.

ED CARNES, Chief Judge:

Florida prisoner Michael Griffin asks us to reconsider the single-judge order

denying him a certificate of appealability (COA).  He argues that jurists of reason

could debate whether Federal Rule of Civil Procedure 60(b)(5) and 60(b)(6) permit

him to challenge the district court's judgment denying his § 2254 petition by

seeking a retroactive application of the Supreme Court's decisions in Trevino v. Thaler and Martinez v. Ryan. See Trevino, — U.S. —, 133 S. Ct. 1911 (2013); Martinez, — U.S. —, 132 S. Ct. 1309 (2012).

Insofar as the Rule 60(b)(6) part of the application is concerned, it is squarely foreclosed by our decision in Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014). For that reason, no COA should issue on it. See Tompkins v. Sec'y, Dep't of Corr., 557 F.3d 1257, 1261 (11th Cir. 2009) (holding that a COA should be denied where the claim "is foreclosed by a binding decision [of] this Court") (quotation marks omitted). The Rule 60(b)(5) part of the application is not already covered by binding precedent precisely on point, so we will discuss it. Wilson's contention is that the final clause in Rule 60(b)(5), which permits litigants to challenge "a final judgment [when] applying it prospectively is no longer equitable," permits him to use Martinez and Trevino to raise ineffective-assistance-of-counsel claims that in his previous federal habeas proceeding were denied based on procedural default.

## I.

Griffin shot and killed Officer Joseph Martin while attempting to evade the police after burglarizing a Florida hotel. Griffin v. State, 639 So. 2d 966, 967 (Fla. 1994). He was convicted of first-degree murder, along with several other felonies,

2

and sentenced to death.[1]  Id. at 967–68.  The Florida Supreme Court affirmed his convictions and sentence on direct appeal.  Id. at 972 & n.4.  It also affirmed the denials of his two motions for postconviction relief.  Griffin v. State, 866 So. 2d 1, 22 (Fla. 2003) (affirming the denial of Griffin's first Rule 3.851 motion); Griffin v. State, 992 So. 2d 819 (Fla. 2008) (unpublished) (affirming the denial of Griffin's second Rule 3.851 motion).

Griffin then turned to federal court, filing a 28 U.S.C. § 2254 petition in October 2008.  The district court denied his petition a year later.  Griffin v. McNeil, 667 F. Supp. 2d 1340, 1373 (S.D. Fla. 2009).  In its order, the court rejected five of Griffin's ineffective-assistance-of-counsel claims on the grounds that they were (1) procedurally barred and (2) meritless.  See id. at 1357–62, 1366–67.  Both the district court and this Court denied Griffin's motions for a COA, and the Supreme Court denied certiorari in May 2012.  See Griffin v. Tucker, 132 S. Ct. 2440 (2012).

Two years later, Griffin filed a motion in the district court under Federal Rule of Civil Procedure 60(b) seeking relief from the court's judgment denying his § 2254 petition.  He argued that, based on the Supreme Court's recent decisions in Trevino and Martinez, he should be allowed to present four of his five ineffective-

---

[1] Those additional felony convictions were:  one count of attempted first-degree murder for the attempt to kill Officer Martin's partner, one count of burglary, two counts of grand theft for stealing the getaway vehicle and the items from the hotel, and one count of being a convicted felon in unlawful possession of a firearm.  Griffin, 639 So. 2d at 967–68.

3

assistance-of-counsel claims that had been held to be procedurally barred when his federal habeas petition was denied in 2009. The district court denied the motion, reasoning that, among other things, Griffin's challenge could not be brought under Rule 60(b). Griffin then filed a motion under Federal Rule of Civil Procedure 59(e) asking the court to alter or amend its order denying Griffin's Rule 60(b) motion. The court denied that motion as well. Having failed to persuade the district court, Griffin filed a notice of appeal and requested a COA, but the district court declined to grant one.

Griffin thereafter filed a motion in this Court seeking a COA, which a single judge of this panel denied. Griffin responded by filing a motion requesting that the Court reconsider the denial of a COA and grant one on the following issue: "Whether Trevino v. Thaler, 133 S.Ct. 1911 (2013) entitles Mr. Griffin to relief from the denial of his habeas petition under Federal Rule of Civil Procedure 60(b)(5) or 60(b)(6) such that the District Court should excuse Mr. Griffin's procedural default barring his ineffective-assistance-of-trial-counsel claim?" As we have already explained, the Rule 60(b)(6) part of the issue is squarely foreclosed by our decision in Arthur, 739 F.3d at 631. We turn now to whether a COA should be granted on the Rule 60(b)(5) part of it.

4

## II.

To appeal the denial of a Rule 60(b)(5) motion, a habeas petitioner must be granted a COA. See 28 U.S.C. § 2253(c)(1); Jackson v. Crosby, 437 F.3d 1290, 1294 (11th Cir. 2006). Where the issue involves both a procedural and a substantive component, a COA may not issue unless the petitioner makes the required showings: (1) "that he had a valid claim of the denial of a constitutional right," and (2) "that the procedural ruling is wrong." Jackson, 437 F.3d at 1295 (quoting Gonzalez v. Sec'y for Dep't of Corr., 366 F.3d 1253, 1267 (11th Cir. 2004)). "These two 'substantial showings,' both procedural and substantive, mean that it must be 'debatable among reasonable jurists' both that the petitioner was denied a constitutional right, and that the district court's procedural decision was wrong." Id. (quoting Gonzalez, 366 F.3d at 1268); see Tennard v. Dretke, 542 U.S. 274, 282, 124 S. Ct. 2562, 2569 (2004); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04 (2000); see also Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (alteration omitted) (quotation marks omitted).

Griffin relies on the last clause in Rule 60(b)(5), which states that "the court may relieve a party . . . from a final judgment" if "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). None of the advisory committee notes define "prospectively," but the word means "[e]ffective or operative in the future." See Black's Law Dictionary 1417 (10th ed. 2014). The plain meaning of "prospectively" in this context is reinforced by decisions of the Supreme Court and this Court.

## A.

The Supreme Court has made it clear that Rule 60(b)(5) applies in ordinary civil litigation where there is a judgment granting continuing prospective relief, such as an injunction, but not to the denial of federal habeas relief. In Agostini v. Felton, the Board of Education of the City of New York sought relief from a permanent injunction that was based on the Supreme Court's earlier interpretation of the Establishment Clause in Aguilar v. Felton. See Agostini, 521 U.S. 203, 208–09, 117 S. Ct. 1997, 2003 (1997) (citing Aguilar, 473 U.S. 402, 105 S. Ct. 3232 (1985)). The Agostini Court held that the Board was entitled to relief under Rule 60(b)(5) because later Establishment Clause decisions had effectively overruled Aguilar, making ongoing injunctive relief based on that decision inequitable. See Agostini, 521 U.S. at 237, 117 S. Ct. at 2017.

6

In its Agostini opinion, the Supreme Court limited its holding in the course of rejecting the argument that the decision would create "a deluge of Rule 60(b)(5) motions premised on nothing more than the claim that various judges or Justices have stated that the law has changed." Id. at 238, 117 S. Ct. at 2018.  The Court explained that, because the last clause of Rule 60(b)(5) applies only to judgments with "prospective application," there would be:

> no effect outside the context of ordinary civil litigation where the propriety of continuing prospective relief is at issue. Cf. Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060 (1989) (applying a more stringent standard for recognizing changes in the law and "new rules" in light of the "interests of comity" present in federal habeas corpus proceedings).

Agostini, 521 U.S. at 239, 117 S. Ct. at 2018.  The Court's citation of Teague was to contrast federal habeas with "ordinary civil litigation where the propriety of continuing prospective relief is at issue."  Id.  With federal habeas, the operative provision was not Rule 60(b)(5) but the retroactivity test announced in the Teague decision.  That test, as the Court noted, is "more stringent" than the 60(b)(5) one. Id.

The reason there was no need to worry about "a deluge of Rule 60(b)(5) motions" based on nothing more than a change in the law, the Court reasoned, is that the rule does not apply in most civil cases including, for example, federal habeas cases.  Id. at 238–39, 117 S. Ct. at 2018.  The reason it does not apply is that, unlike civil cases in which the judgment granted injunctive relief of some sort,

7

there is no injunctive relief or continuing prospective effect within the meaning of Rule 60(b)(5) in federal habeas cases.  In this way the Court sent a clear message in its Agostini opinion that Rule 60(b)(5) does not apply in federal habeas proceedings, at least the typical ones where the judgment is an unconditional denial of habeas relief with no injunctive relief.[2]

The Supreme Court bolstered Agostini's interpretation of Rule 60(b)(5) in Horne v. Flores, 557 U.S. 433, 129 S. Ct. 2579 (2009).  The Court explained that the portion of Rule 60(b)(5) governing prospective judgments "may not be used to challenge the legal conclusions on which a prior judgment or order rests."  Id. at 447, 129 S. Ct. at 2593.  Which is precisely what Griffin seeks to do here:  use

---

[2] Though Griffin does not mention it, Gonzalez v. Crosby notes the possibility that Rule 60(b)(5) may be used in habeas proceedings where "it is the State, not the habeas petitioner, that seeks to use Rule 60(b), to reopen a habeas judgment granting the writ."  545 U.S. 524, 534, 125 S. Ct. 2641, 2649 (2005).  A judgment granting the writ is different from a judgment denying the writ in the respect that matters — the existence of injunctive-type relief.  When the writ is granted, the judgment typically enjoins the State to retry or resentence the petitioner within a specified period of time or release him.  See, e.g., Lee v. Lampert, 653 F.3d 929, 932 (9th Cir. 2011) ("The court therefore granted Lee's petition, vacated his conviction and sentence, and allowed the State of Oregon 120 days to retry or release him."); Woods v. Dugger, 923 F.2d 1454, 1456 (11th Cir. 1991) ("The district court granted the petition on the [Eighth Amendment] claim, ordering the trial court to resentence [the petitioner] within 180 days and to take into account all mitigating evidence as well as the jury's recommendation of death."); see also Harvest v. Castro, 531 F.3d 737, 748 (9th Cir. 2008) (explaining that an order granting a conditional writ of habeas corpus had prospective effect for purposes of Rule 60(b)(5) because "the conditional writ itself clearly contemplated continued supervision in that it ordered the State to 'file and serve a notice of compliance with this Order no later than sixty (60) days from the date of this Order'"); Gentry v. Deuth, 456 F.3d 687, 692 (6th Cir. 2006) ("[T]he district court retain[s] jurisdiction to enforce its conditional grant of a writ of habeas corpus."); Phifer v. Warden, 53 F.3d 859, 861 (7th Cir. 1995) ("[A] district court retains jurisdiction to determine whether a party has complied with the terms of a conditional [habeas] order.").  By contrast, when habeas relief is denied, neither party is ordered to do anything.

Rule 60(b)(5) to challenge the district court's legal conclusion that his four ineffective-assistance-of-counsel claims are procedurally barred. Because reasonable jurists would not debate whether habeas petitioners may use Rule 60(b)(5) to do what the Supreme Court has forbidden, there is no question that it does not provide a vehicle here for Griffin to relitigate the denial of his § 2254 petition.

There is no later decision from the Supreme Court that could reasonably be read as undermining Agostini's teaching. Griffin cites the Supreme Court's statement in Frew ex rel. Frew v. Hawkins that Rule 60(b)(5) "encompasses the traditional power of a court of equity to modify its decree in light of changed circumstances." 540 U.S. 431, 441, 124 S. Ct. 899, 906 (2004). But he ignores the fact that Frew's reference to a "decree" is limited to consent decrees, a unique form of civil remedy that has "elements of both contracts and judicial decrees."[3] Id. at 437, 124 S. Ct. at 903. A consent decree ordinarily provides a form of equitable relief that has long been recognized as subject to potential modification by the court in the future. See 11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2863, at 454–56 & n.13 (3d ed. 2012). An order or judgment denying a § 2254 petition is not a consent decree. Frew was not

---

[3] Frew addressed "whether the Eleventh Amendment bars enforcement of a federal consent decree entered into by state officials." 540 U.S. at 433, 124 S. Ct. at 901.

9

a § 2254 case and does not mention habeas.  Frew's statements about Rule 60(b)(5) do not support Griffin's position.[4]

## B.

While we have yet to address Rule 60(b)(5) in the context of § 2254 proceedings, binding decisions of this Court have defined the term "prospectively" in a way that forecloses any reasonable possibility that the rule could apply here. Our most comprehensive discussion of Rule 60(b)(5) comes from the decision in Cook v. Birmingham News, 618 F.2d 1149, 1151–53 (5th Cir. 1980).[5]  We held there that "rule 60(b)(5) applies only to judgments that have prospective effect as contrasted with those that offer a present remedy for a past wrong."  Id. at 1152 (quotation marks omitted).  We explained that judgments operate "prospectively" within the meaning of Rule 60(b)(5) if they "involve the supervision of changing conduct or conditions."  Id. at 1152 (quoting United States v. Swift & Co., 286 U.S. 106, 114, 52 S. Ct. 460, 462 (1932)).  The classic example is a continuing injunction.  See id.  We also stressed that the rule's use of the term "prospectively"

---

[4] The two single-judge orders issued by members of this Court granting COAs on the same basic issue Griffin raises, see infra Part II.C, both quote Frew's statement that "district courts should apply a flexible standard to the modification of consent decrees when a significant change in facts or law warrants their amendment."  540 U.S. at 441, 124 S. Ct. at 906 (emphasis added) (quotation marks omitted).  See Order, Jimenez v. Fla. Dep't of Corr., No. 14-13932, slip op. at 10 (11th Cir. Feb. 2, 2015); Order, Quintero v. Sec'y, Dep't of Corr., No. 13-15896, slip op. at 3–4 (11th Cir. Aug. 29, 2014).  Those orders' reliance on Frew is as misplaced as Griffin's is.

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

10

to limit its applicability means that our application of the rule must recognize "the need to achieve finality in litigation." Id. at 1153. Applying that understanding of Rule 60(b)(5), we held that the consent decree at issue in Cook did not have prospective effect because: (1) the decree expressly stated that the court "'decline[d] plaintiffs' prayer for injunctive relief'"; (2) it did not order the defendant to pay the plaintiffs; and (3) the district court "did not state that it reserved power to modify the decree or that it retained jurisdiction over the case." Id. at 1152–53.

Cook means that Rule 60(b)(5) does not apply to decisions denying habeas relief because they do not "involve the supervision of changing conduct or conditions," they do not order either party to take any action, they do not include a retention of jurisdiction over the case, and "the need to achieve finality in litigation" is at its height in federal habeas proceedings. See id.; see also Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("Federal habeas challenges to state convictions . . . entail greater finality problems and special comity concerns."); Gonzalez, 366 F.3d at 1269 ("The central purpose behind the AEDPA was to ensure greater finality of state and federal court judgments in criminal cases . . . ."); Johnson v. United States, 340 F.3d 1219, 1224 (11th Cir. 2003) ("[O]ne of the principal functions of AEDPA was to ensure a greater degree of finality for convictions.").

11

Other decisions of our Court have expounded <u>Cook</u>'s interpretation of the word "prospectively" in Rule 60(b)(5)'s. In <u>Lee v. Talladega County Board of Education</u>, 963 F.2d 1426, 1432–33 (11th Cir. 1992), we held that the order at issue, which dissolved a previous injunction, did not operate "prospectively" for purposes of Rule 60(b)(5) because "[t]here was nothing for the court to implement after" it entered the order. The same is true of orders denying habeas relief. And in <u>Gibbs v. Maxwell House</u>, 738 F.2d 1153, 1155 (11th Cir. 1984), we held that "[t]he judgment of dismissal in this case was not prospective within the meaning of 60(b)(5)" because "[i]t was final and permanent." We explained that the fact the "plaintiff remains bound by the dismissal is not a 'prospective effect' within the meaning of rule 60(b)(5) any more than if [the] plaintiff were continuing to feel the effects of a money judgment against him." <u>Id.</u> at 1156. The same is true of judgments denying habeas relief.

Our precedent construing the "prospective" requirement for application of Rule 60(b)(5) is more law that places beyond reasonable debate the issue of whether that rule can be used by § 2254 petitioners to attack final district court judgments denying them habeas relief. When the district court entered its judgment denying Griffin's petition for a federal writ of habeas corpus, it did not

12

include any features having prospective effect.[6]  Like the decree in <u>Cook</u>, the court did not grant any form of injunctive relief, or order the State to take any action, or reserve continuing power over the case, or retain jurisdiction over the case.  See 618 F.2d at 1152–53.  Like the order in <u>Lee</u>, there was "nothing for the court to implement after" it entered its judgment and closed the case.  See 963 F.2d at 1432.  Like the judgment of dismissal in <u>Gibbs</u>, the judgment was final and permanent.  See 738 F.2d at 1155–56.  And like the decree in <u>Cook</u>, the order in <u>Lee</u>, and the dismissal in <u>Gibbs</u>, the judgment in Griffin's federal habeas case is not reachable through Rule 60(b)(5).

We note that our sister circuits have also interpreted Rule 60(b)(5) in a manner that forecloses any reasonable debate as to whether it can be used to challenge the denial of a § 2254 petition based on later Supreme Court decisions. The vast majority of them have adopted the D.C. Circuit's interpretation of "prospectively," which limits the relevant subsection of Rule 60(b)(5) to final judgments that are either:  (1) "executory," in that they have not been fully executed; or (2) involve "the supervision of changing conduct or conditions." <u>Twelve John Does v. District of Columbia</u>, 841 F.2d 1133, 1139 (D.C. Cir. 1988) (quotation marks omitted); <u>see</u> <u>In re Racing Servs., Inc.</u>, 571 F.3d 729, 733 (8th

---

[6] The final page of the order and judgment states:  "For the foregoing reasons, it is ORDERED AND ADJUDGED that Petitioner's Amended Petition for Writ of Habeas Corpus by a Person in State Custody is DENIED.  The Clerk of the Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT."

Cir. 2009); <u>Kalamazoo River Study Grp. v. Rockwell Int'l Corp.</u>, 355 F.3d 574, 587 (6th Cir. 2004); <u>Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.</u>, 131 F.3d 625, 630 (7th Cir. 1997); <u>Maraziti v. Thorpe</u>, 52 F.3d 252, 254 (9th Cir. 1995); <u>DeWeerth v. Baldinger</u>, 38 F.3d 1266, 1275–76 (2d Cir. 1994); <u>Dowell v. Bd. of Educ. of Okla. City Pub. Sch.</u>, 8 F.3d 1501, 1509 (10th Cir. 1993); <u>see also</u> <u>Comfort v. Lynn Sch. Comm.</u>, 560 F.3d 22, 28 (1st Cir. 2009) (citing <u>Twelve John Does</u> and asking whether the judgment is "executory" or "leave[s] open for future adjudication any issues regarding the rights of the parties").  A district court's judgment denying a § 2254 petition does not meet that standard.  It is not "executory" because there is nothing to execute after the entry of the judgment denying the petition, and it does not supervise changing conduct or conditions because the judgment ends the habeas proceeding.

The three circuits that have not yet adopted the <u>Twelve John Does</u> standard have nevertheless interpreted Rule 60(b)(5) in a manner that unquestionably forecloses Griffin's argument.  Two of those three circuits follow the precedent of this Court that we discussed in the previous section.  The Fifth Circuit follows its (and our predecessor court's) decision in <u>Cook</u>.  <u>See</u> <u>Picco v. Global Marine Drilling Co.</u>, 900 F.2d 846, 851 (5th Cir. 1990) (citing <u>Cook</u>, 618 F.2d at 1151).  And the Fourth Circuit has adopted our decision in <u>Gibbs</u>.  <u>See</u> <u>Schwartz v. United States</u>, 976 F.2d 213, 218 (4th Cir. 1992) (citing <u>Gibbs</u>, 738 F.2d at 1155–56).

14

That means the Fifth and Fourth Circuits have adopted an interpretation of Rule 60(b)(5) under which the denial of habeas relief is not a prospective judgment subject to modification under Rule 60(b)(5).  Finally, the Third Circuit has held that judgments that are "inherently final" cannot be "prospective" for purposes of Rule 60(b)(5).  Marshall v. Bd. of Ed., 575 F.2d 417, 425 (3d Cir. 1978) (quotation marks omitted); see Kock v. Gov't of Virgin Islands, 811 F.2d 240, 244–45 (3d Cir. 1987) (explaining that "a final judgment having conclusive, res judicata effect" is not prospective under Rule 60(b)(5)).  The district court's denial of Griffin's § 2254 petition was an inherently final judgment because, as we explained above, it brought habeas proceedings in the district court to a close.

In the face of this Court's and every other circuit's decisions interpreting Rule 60(b)(5), reasonable jurists could not find the district court's decision refusing to apply that rule wrong.

## C.

Griffin offers two arguments for why reasonable jurists could debate whether Rule 60(b)(5) allows a § 2254 petitioner to challenge a final judgment based on subsequent Supreme Court decisions.  Neither has merit.

Griffin's first argument is that:  "While the judgment remains in force, the underlying state court adjudication also remains in force, and so, too, does Mr. Griffin's death sentence.  Mr. Griffin's continued imprisonment and pending death

15

at the hands of the State is thus 'prospective' under Rule 60(b)(5)." Motion to Reconsider at 17. But that reasoning conflates the federal habeas judgment with the state court judgment and the death sentence. As the D.C. Circuit explained in a non-habeas case:

> Virtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect; even a money judgment has continuing consequences, most obviously until it is satisfied, and thereafter as well inasmuch as everyone is constrained by his or her net worth. That a court's action has continuing consequences, however, does not necessarily mean that it has "prospective application" for the purposes of Rule 60(b)(5).

Twelve John Does, 841 F.2d at 1138. And as we explained in Gibbs, the fact that a litigant continues to feel the effects of a judgment against him is not enough to establish that the judgment operates prospectively within the meaning of Rule 60(b)(5). See 738 F.2d at 1155–56; see also Coltec Indus., Inc. v. Hobgood, 280 F.3d 262, 272 (3d Cir. 2002) (collecting cases rejecting arguments similar to Griffin's). Likewise, the fact that the federal judgment denying relief leaves Griffin under a death sentence does not establish that the federal judgment has a prospective effect. The refusal to enjoin an act, or interfere with the judgment of another court, does not constitute the issuance of "continuing prospective relief." See Agostini, 521 U.S. at 239, 117 S. Ct. at 2018. Nothing in the district court's judgment requires the State to detain Griffin or to carry out his death sentence or to do anything in the future. It simply refuses to prevent the State from carrying out

16

the sentence.  Denial of continuing prospective relief is not issuance of continuing prospective relief.

This argument of Griffin's cannot be squared with the Supreme Court's opinion in <u>Agostini</u>.  If he is right, every judgment denying a § 2254 petition by a state prisoner on death row is a "prospective" judgment under Rule 60(b)(5) and can be challenged whenever the Supreme Court issues a decision that changes, or might change, constitutional or habeas law.  That result would eviscerate our binding precedent holding that <u>Martinez</u> (the Supreme Court decision that Griffin wants to apply retroactively) is not retroactively applicable.  <u>See, e.g.</u>, <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 742 F.3d 940, 945–46 (11th Cir. 2014); <u>Arthur</u>, 739 F.3d at 633.  It would also make it much easier for habeas petitioners to attack the denial of their § 2254 petitions using Supreme Court decisions issued after the judgment denying relief became final.  After all, Rule 60(b)(5) requires only that the moving party demonstrate "a significant change . . . in law."  <u>Horne</u>, 557 U.S. at 447, 129 S. Ct. at 2593 (quotation marks omitted).  That is a much lower bar than what a § 2254 petitioner must meet in order to receive the retroactive application of a Supreme Court decision or to challenge a final judgment under Rule 60(b)(6).  <u>See, e.g.</u>, <u>Schriro v. Summerlin</u>, 542 U.S. 348, 351–53, 124 S. Ct. 2519, 2522–23 (2004) (explaining that few decisions should have retroactive effect under <u>Teague</u>); <u>Booker v. Singletary</u>, 90 F.3d 440, 442 (11th Cir. 1996)

17

(explaining that Rule 60(b)(6) provides an "extraordinary remedy" that is limited to "extraordinary circumstances," and that "a 'mere' change in the law" will not justify relief) (quotation marks omitted). And, once again, the Court in Agostini indicated that Rule 60(b)(5) does not permit federal habeas petitioners to use the rule as a means to circumvent the "more stringent standard for recognizing changes in the law . . . in federal habeas corpus proceedings." 521 U.S. at 239, 117 S. Ct. at 2018.

Griffin's second argument is that because two members of this Court have issued single-judge orders granting COAs on the issue of whether Rule 60(b)(5) permits retroactive application of Martinez and Trevino, we must agree that reasonable jurists would find the district court's decision debatable. Motion to Reconsider at 14–15 (citing Order, Jimenez v. Fla. Dep't of Corr., No. 14-13932 (11th Cir. Feb. 2, 2015); Order, Quintero v. Sec'y, Dep't of Corr., No. 13-15896 (11th Cir. Aug. 29, 2014)). We have, however, never held that the "reasonable jurists" standard under 28 U.S.C. § 2253(c) is a subjective one that turns on the view of a particular judge or judges. And we will not do so now.

Such a holding would conflict with how the Supreme Court has defined "reasonableness" in other habeas contexts — which is using an objective standard instead of a subjective one. The "unreasonable application" clause of § 2254(d)(1) and the "fairminded jurists" standard the Court has fashioned for that clause are,

18

like the standard for issuing a COA, purely objective.  See Harrington v. Richter, 562 U.S. 86, 101, 131 S. Ct. 770, 785–86 (2011) (holding that a state court decision is not an "unreasonable application" under § 2254(d)(1) "so long as fairminded jurists could disagree on the correctness of the state court's decision") (quotation marks omitted); Williams v. Taylor, 529 U.S. 362, 409–10, 120 S. Ct. 1495, 1521–22 (2000) (opinion of O'Connor, J.).  Because § 2254(d)(1)'s "unreasonable application" standard is an objective one, the Supreme Court has held that "the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did in the habeas petitioner's case" cannot be determinative.  Williams, 529 U.S. at 410, 120 S. Ct. at 1522.  Otherwise, the objective standard would be transformed "into a subjective one."  Id. at 410, 120 S. Ct. at 1521–22.  The same is true here.  If the fact that one or more judges had granted a COA on an issue, or even concluded that the issue had merit, required all other judges to grant a COA on the issue, the standard would be transformed from objective to subjective.  It is not a subjective standard.

Griffin's any-one-is-enough rule for applying the reasonable-jurists standard for COAs misses the point that the two judges who issued those single-judge orders did not actually conclude that there was merit to his argument that Rule 60(b)(5) could be applied to reopen final judgments denying federal habeas relief.  They instead concluded only that it was an issue about which reasonable jurists

19

could disagree. That is the same question that is before us, and a single judge's expression of views in an order does not bind a panel of three judges. See 11th Cir. R. 27-1(d)(2) (providing that single judge's COA order is "subject to review by the court"); 11th Cir. R. 27-1(g) ("A ruling on a motion . . . by a single judge . . . is not binding upon the panel to which the appeal is assigned on the merits, and the merits panel may alter, amend, or vacate it."); see also Boone v. Sec'y, Dep't of Corr., 377 F.3d 1315, 1317 (11th Cir. 2004) (vacating the COA granted by the district court).

Even if we misconstrued the issuance of a COA on an issue to reflect a belief of the issuing judge that there actually is merit to the petitioner's position on that issue — something it does not reflect — the fact that one or two judges believed an issue has merit would not compel us to issue a COA when we believe it does not.[7] The test is purely objective, not subjective as to any judge or judges.

Griffin's contrary position, his any-one-is-enough rule, would have far-reaching implications and effectively make it impossible to deny a COA on any issue. Under his rule, we would not know that an issue is not reasonably debatable

---

[7] The denial of a COA by three judges in a published opinion, however, does constitute binding precedent that the issue in question has no merit. It does because a COA can be denied only if the petitioner's position on the merits of the issue is not debatable among reasonable jurists. And a holding that an issue is not reasonably debatable necessarily means it lacks merit; otherwise it would be debatable. Cf. In re Provenzano, 215 F.3d 1233, 1235 (11th Cir. 2000) (citing as binding prior-panel precedent a three-judge order denying an application for a second or successive habeas petition); see also United States v. Kaley, 579 F.3d 1246, 1255 (11th Cir. 2009) (citing In re Provenzano as binding authority under the prior-panel-precedent rule).

20

unless and until all 17 active and senior judges of this Court were asked their views on it. And even if all of them agreed that the issue is not debatable among jurists of reason, what about the approximately 100 judges of the district courts in this circuit? If, as Griffin insists, the view of one reasonable jurist is enough to require all judges to grant a COA, wouldn't those 100 district court judges have to be polled? If any one of them granted a COA on an issue, wouldn't we have to grant a COA on the same issue in other cases?

And, of course, there are the other eleven geographic circuits with a total of approximately 1,200 district and court of appeals judges. Under Griffin's any-one-is-enough rule, if even one of those 1,200 judges believes that a COA should be granted on the issue, we would be required to grant a COA. The any-one-is-enough rule cannot be, and is not, the law.

Griffin's motion for reconsideration is **DENIED**.

21